946 P.2d 388 (1997)
133 Wash.2d 490
Cline PRICE, Petitioner,
v.
FARMERS INSURANCE COMPANY OF WASHINGTON, Respondent.
No. 64257-5.
Supreme Court of Washington, En Banc.
Argued February 26, 1997.
Decided November 13, 1997.
*389 Luvera, Barnett, Brindley, Beninger & Cunningham, David M. Beninger, Seattle, Maltman, Reed, North, Ahrens & Malnati, Douglass North, Seattle, for Petitioner.
Merrick, Hofstedt & Lindsey, P.S., Sidney R. Snyder, Jr., Ronald S. Dinning, Seattle, for Respondent.
Harbaugh & Bloom, Gary N. Bloom, Spokane, Debra L. Stephens, Bryan P. Harnetiaux, Spokane, for Amicus Curiae, for the Washington State Trial Lawyers Association.
SANDERS, Justice.
This dispute centers upon whether previously paid personal injury protection benefits are properly offset against an underinsured motorist award. In a special proceeding to confirm an arbitration award the trial court determined setoff was clearly inappropriate under policy language. Subsequently the Court of Appeals held applicable policy language clearly required the opposite. We agree the answer is clear: neither the trial court in an arbitration confirmation proceeding nor the appellate court which reviews the confirmed award has jurisdiction to even consider the question.

Facts
Facts relevant to this disposition are relatively simple. Cline Price, an insured of Farmers Insurance Company of Washington (Farmers), was injured in an automobile accident on March 30, 1991. His "E-Z-Reader Car Policy" provided multiple coverages for underinsured motorists (UIM), personal injury protection (PIP), and liability. Ultimately Price settled with the tortfeasor for the limits of the tortfeasor's liability policy, and Farmers paid Price $24,339.00 in PIP benefits. Claiming his actual damages exceeded tortfeasor liability limits, Price pressed Farmers for yet a further award under his UIM coverage. However, Price and Farmers were unable to agree on the total amount of the damages sustained, requiring the matter to be determined pursuant to the policy arbitration clause. This clause provided:
Arbitration
If an insured person and we do not agree (1) that the person is legally entitled to *390 recover damages from the owner or operator of an underinsured motor vehicle, or (2) as to the amount of payment under the Part, either that person or we may demand that the issue be determined by arbitration.
Clerk's Papers (CP) at 14.
Ultimately a majority of the three arbitrators entered an arbitration award which simply stated: "The award in the above-referenced matter was $275,000 with Mr. Petersen dissenting." CP at 41. We assume that figure represents a calculation of total damages incurred by the insured as a proximate result of the subject accident without adjustment, setoff, or reduction for any other reason.[1] No other issues were determined by the arbitrators except their own fees.
Thereafter Price, the insured, sought statutory confirmation in a special superior court proceeding which he commenced pursuant to RCW 7.04. That chapter specifically provides:
Confirmation of award by court
At any time within one year after the award is made, unless the parties shall extend the time in writing, any party to the arbitration may apply to the court for an order confirming the award, and the court shall grant such an order unless the award is beyond the jurisdiction of the court, or is vacated, modified, or corrected, as provided in RCW 7.04.160 and 7.04.170....
RCW 7.04.150.
RCW 7.04.160 provides various limited grounds for vacating the arbitrators' award, none of which are applicable here. RCW 7.04.170 also authorizes the superior court to modify or correct the award on several specific grounds, none of which apply here, with the possible exception of subsection three. See footnote one, supra.
However Price's statutory confirmation noticeably expanded the scope of the arbitration proceeding beyond that which was actually submitted to the arbitrators by the insurance contract. The court proceeding further purported to determine, adverse to Farmers, the net judgment should not be reduced by offsetting the $24,339.00 in previously paid PIP benefits.[2] Ultimately the trial court entered an amended order confirming the arbitration award in favor of insured Price against Farmers in the net amount of $66,585.00 plus statutory costs, without any reduction for the previously paid PIP payment, finding it "clear under the insurance policy involved that respondent [Farmers] is not entitled to an offset." CP at 99.
From there the matter proceeded to the Court of Appeals, Division 1. Price v. Farmers Ins. Co., 82 Wash.App. 20, 916 P.2d 949 (1996) reversed the superior court for its failure to offset the $24,339.00 in PIP payments and directed the offset, concluding the policy provision allegedly requiring such a setoff was "clear and unambiguous." Id. at 24, 916 P.2d 949. Price then petitioned this court for review, which we accepted. 130 Wash.2d 1007, 928 P.2d 415 (1996).

Analysis
Although the propriety of a PIP offset under these circumstances and this policy language is a fascinating question, which the superior court and the Court of Appeals have answered in a "clearly" irreconcilable manner, the question of jurisdiction is fundamental and, in this case, dispositive.
Arbitration in this state is controlled by RCW 7.04, a statute that "amounts to a code of arbitration." Northern State Constr. Co. v. Banchero, 63 Wash.2d 245, 249, 386 P.2d 625 (1963). The statute provides:
Two or more parties may agree in writing to submit to arbitration, in conformity with the provisions of this chapter, any *391 controversy which may be the subject of an action existing between them at the time of the agreement to submit, or they may include in a written agreement a provision to settle by arbitration any controversy thereafter arising between them out of or in relation to such agreement. Such agreement shall be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement.
RCW 7.04.010.
Arbitration is a statutorily recognized special proceeding. The rights of the parties are controlled by the statute. Northern State Constr. Co., 63 Wash.2d at 249, 386 P.2d 625. Arbitration traces its existence and jurisdiction first to the parties' contract[3] and then to the arbitration statute itself. Thorgaard Plumbing & Heating Co. v. King County, 71 Wash.2d 126, 132, 426 P.2d 828 (1967). Arbitrators are to determine the question submitted in writing. Barnett v. Hicks, 119 Wash.2d 151, 156, 829 P.2d 1087 (1992).
After the arbitrators' award, RCW 7.04.150 provides any party may apply to the court for an order confirming the award "and the court shall grant such an order unless the award is beyond the jurisdiction of the court, or is vacated, modified, or corrected, as provided in RCW 7.04.160. and 7.04.170." Those referenced statutes state the grounds upon which the trial court may vacate or modify the award; however, it is undisputed this trial court found no such grounds here, and from the face of the award no such grounds appear to exist. The confirming court does not have collateral authority to go behind the face of the award or to determine whether additional award amounts are appropriate. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994). Nor is a trial court permitted to conduct a trial de novo upon confirmation or search the four corners of the document to discern the parties' intent. Boyd v. Davis, 127 Wash.2d 256, 262-63, 897 P.2d 1239 (1995). Although a party may apply to the court to confirm an arbitration award, that is not the same as bringing an original action to obtain a monetary judgment. Thorgaard Plumbing & Heating Co., 71 Wash.2d at 132, 426 P.2d 828. A confirmation action is no more than a motion for an order to render judgment on the award previously made by the arbitrators pursuant to contract. Id. If the court does not modify, vacate, or correct the award, the court exercises a mere ministerial duty to reduce the award to judgment. Id.
Here the arbitration submittal, as is typical for such UIM arbitration clauses,[4] was limited to determination of tortfeasor liability and calculation of total damages.[5] *392 These are not coverage questions and therefore do not allow the insured to recover reasonable attorney fees pursuant to Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991). See Dayton, 124 Wash.2d 277, 876 P.2d 896. Although an arbitration clause could submit coverage questions to arbitration, that is not our case,[6] nor is that the usual practice. When or if the arbitration award is brought to the superior court for confirmation, the jurisdiction of the superior court is limited by the nature of the special statutory proceeding to resolve only those questions properly submitted to the arbitrators and costs; so as to reduce to judgment only such matters properly submitted to arbitration and as the parties may otherwise agree.[7] Here, as in most cases, coverage questions were not submitted to the arbitrators for disposition and were therefore beyond the jurisdiction of the superior court to determine, absent agreement in result.[8]
Jurisdictional limitations on the scope of arbitration are recognized in at least 16 other states. 2 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 24.4 at 277 (2d ed.1992). This state also recognizes jurisdictional limitations in general on the scope of arbitration. See Detweiler v. J.C. Penney Cas. Ins. Co., 110 Wash.2d 99, 113, 751 P.2d 282 (1988) ("The question of coverage, however, is for the courts to determine.... If a party wants to have a coverage issue resolved, such an adjudication may be obtained through a declaratory judgment action. And if desired, a jury trial may also be obtained to try any factual issues in the declaratory judgment action.") (footnotes omitted); Cantwell v. Safeco Ins. Co., 37 Wash.App. 133, 136, 678 P.2d 852 (1984) ("The question of coverage is a matter for the court to decide and is not an issue for arbitration. The issues of liability and injuries and damages are the issues to be arbitrated."); Sullivan v. Great Am. Ins. Co., 23 Wash.App. 242, 246, 594 P.2d 454 (1979) ("An agreement for the submission of a dispute to arbitration defines and limits the issue to be decided. The authority of the arbitrator is wholly dependent upon the terms of the agreement of submission. The arbitration award must concern only those matters included within the agreement for submission and must not exceed the powers established by the submission."); Rau v. Liberty Mut. Ins. Co., 21 Wash.App. 326, 335, 585 P.2d 157 (1978) ("Although it is appropriate for the courts to determine the question of coverage, as we have done, the remaining issues of liability, injuries and damages are issues to be decided by arbitration."); Hartford Accident & Indem. Co. v. Novak, 83 Wash.2d 576, 586, 520 P.2d 1368 (1974) ("The authorities are uniform that the question of coverage is not an issue for arbitration, and we so hold. However, the authorities are equally clear that the issue of liability and injuries and damages sustained are properly matters for arbitration where the policy so provides."); see also AMICA Mut. Ins. Co. v. Baldassare, 624 A.2d 312, 314 (R.I.1993) ("Arbitration is provided in the event of disagreement in respect to liability and damages. There is no agreement to submit coverage questions to arbitration."); Note, Insurance: Scope of Uninsured Motorist Arbitration Clause, "Reasonably Debatable" and therefore Arbitrable *393 under UAA, 60 Minn. L.Rev. 851, 854 (1976) (stating most jurisdictions follow the rule that arbitration is limited to only those matters upon which the parties have agreed and coverage determinations must be determined by a court); Gerald Aksen, Arbitration of Uninsured Motorist Endorsement Claims, 24 Ohio St. L.J. 589, 603 (1963) (stating that courts may determine extent of coverage at a preliminary court hearing but cannot determine legal liability or damages). Such authority stands not only for the proposition that the court's jurisdiction is limited to confirm, vacate, or modify an arbitration award, but also for the proposition that the arbiter's authority is limited by that which is submitted pursuant to the agreement to arbitrate. Consequently, any action by the arbitration panel beyond that which is submitted is subject to vacation by the court. See Allstate Ins. Co. v. Horn, 24 Ill.App.3d 583, 321 N.E.2d 285, 292 (1974) (arbiter had power to determine only those issues contained within arbitration provision and consequently arbiter had no authority to determine coverage question and award was properly vacated by the trial court).
Arbitrators have no jurisdiction to determine any other issue absent agreement by the parties. Such nonarbitrable matters normally include whether the claimant is an "insured" under the policy, whether the injuries resulted from an "accident," whether the tortfeasor was operating a "hit-and-run" vehicle, was "uninsured," or whether the injuries resulted from the "ownership and maintenance or use" of an uninsured or hit-and-run vehicle. Widiss, supra § 24.5 at 283-94.
Our view that the court's jurisdiction in a confirmation proceeding is limited by the charge to the arbitrators (which usually excludes coverage questions) is consistent with much prior Washington authority,[9] although some cases are arguably inconsistent with that rule.[10] The latter must either be factually distinguished or are herewith overruled to the extent necessary. This conclusion is consistent with the recognized rule in most states. As the New York Court of Appeals stated in Rosenbaum v. American Sur. Co., 11 N.Y.2d 310, 183 N.E.2d 667, 668, 229 N.Y.S.2d 375, 377-78 (1962):
The policy endorsement did not cover all controversies between insured and insurer. It promised to pay for damage for which an uninsured driver should be liable but it made arbitrable two fact issues only: as to fault ("legally entitled") and as to damages if fault should be established. No language in the endorsement can be read as an agreement to send to arbitrators a disagreement as to whether there was or was not liability insurance covering a car which should injure the insured. The arbitration clause was particular, not general. There comes into play, therefore, the familiar rule that "No one is under a duty to resort to arbitration unless by clear language he has so agreed." An agreement to arbitrate will not be extended "`by construction or implication.'"
Rosenbaum, 229 N.Y.S.2d 375, 183 N.E.2d at 668 (citations omitted).
But the question still remains what is the appropriate procedure to be undertaken by the confirming court when the amount of the proposed money judgment is a matter of dispute between the parties because of considerations extraneous to the agreed submittal to the arbitrators. That is precisely the question here. This again is answered by the arbitration statute itself. RCW 7.04.150 references "an order confirming the award," whereas RCW 7.04.190 references a "judgment or decree" to be entered in conformity to the order. Since one policy served by the arbitration statute is to finally determine disputes insofar as they are submitted *394 to arbitration, Barnett, 119 Wash.2d at 160, 829 P.2d 1087, the court should confirm in declaratory judgment form the result of the arbitration (here the total damages incurred) as well as such other matters as agreed by the parties; and only then render monetary judgment thereon to the extent same may be determined absent resolution of relevant disputed coverage issues beyond the scope of the arbitrators' jurisdiction. It is the burden of the insurer to demonstrate there is a further coverage dispute which would prevent full resolution of all issues at this point. See Aetna Cas. & Sur. Co. v. Mari, 102 A.D.2d 772, 476 N.Y.S.2d 910, 913 (1984). Farmers carried its burden to show the PIP offset was a matter of dispute. Here, for example, the gross damages would be $275,000.00,[11] less $208,415 undisputedly awarded under the tortfeasor's liability policy, less $24,339 (disputed PIP offset) for a net money judgment of $42,246 plus costs. Thereafter the parties must either resolve the remaining PIP offset coverage dispute by agreement or commence a separate action under the superior court's general jurisdiction to determine the amount and propriety of the claimed PIP offset and enter the corresponding monetary judgment.
Sometimes this procedure will require a bifurcation of the proceeding and additional delays; however, such is inevitable where the policy calls for some but not all issues to be resolved by arbitration and remaining issues are not resolved by agreement. However, the procedure does not rule out further agreement between the parties to either enlarge the scope of the arbitration or eliminate it altogether.

Conclusion
We therefore hold:
(1) The Court of Appeals is reversed;
(2) This proceeding is remanded to the Skagit County Superior Court for further proceedings consistent with this opinion, and neither party shall recover their costs on appeal as neither clearly prevailed over the other.[12]
SMITH, GUY, JOHNSON, MADSEN and ALEXANDER, JJ., concur.
TALMADGE, Justice, dissenting.
After an arbitration was held to determine the extent of damages to Cline Price for purposes of underinsured motorist coverage (UIM), Farmers Insurance Company of Washington (Farmers) was entitled to an offset for personal injury protection (PIP) benefits paid to Price. But the majority determines the trial court lacked jurisdiction to consider any offset in confirming an arbitration award pursuant to RCW 7.04. Instead, the majority requires Farmers to commence a needless, separate declaratory judgment action to secure the offset. The majority's interpretation of the trial court's jurisdiction to confirm arbitration awards under RCW 7.04 is wrong, mandating a completely impractical procedure for confirming arbitration awards. For these reasons, I respectfully dissent.[1]
A. Offset Against UIM Recovery for PIP Benefits Paid
The majority does not reach the merits of Farmers' entitlement to an offset against any payment under Price's UIM coverage in his *395 Farmers policy for PIP benefits paid to him under that same policy. On the merits, the Court of Appeals opinion is sound and wellreasoned: Farmers was entitled to an offset against any UIM payment for PIP benefits paid to Price. See Price v. Farmers Ins. Co., 82 Wash.App. 20, 23-25, 916 P.2d 949 (1996).
As we held in Keenan v. Industrial Indem. Ins. Co. of the Northwest, 108 Wash.2d 314, 319, 738 P.2d 270 (1987), if an insurance contract contains an offset clause, the clause will be enforced to the extent the insured is fully compensated for his or her damages. In the present case, the Farmers policy contained the following provision in its conditions section allowing for an offset:
5. Our Right to Recover Payment
When a person has been paid damages by us under this policy and also recovers from another, we shall be reimbursed to the extent of our payment after that person has been fully compensated for his or her loss.
Except as limited above, we are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.
It may be necessary for us to make payment under the Underinsured Motorist Coverage due to the insolvency of another insurance carrier. In such a case, our right of subrogation is limited to proceedings directly against the insolvent insurer or receiver. We will exercise those rights which the person insured by the insolvent insurer might otherwise have had, if he or she had personally made the payment.
Clerk's Papers at 16. As the Court of Appeals noted, the recovery provision is unambiguous. Price, 82 Wash.App. at 24, 916 P.2d 949. This provision indicates if the insured is compensated from a third party, such compensation will be an offset against the amount due under the UIM provision in the policy. It provides no limitation in cases in which the insured's loss is compensated by a third party and also by the insured's UIM coverage. Id. For underinsured motorist coverage, a combination of payments by a third party and the insured's own UIM coverage is naturally contemplated. No public policy rationale exists to defeat an offset against underinsured motorist coverage. Consequently, we should allow an offset for PIP benefits paid to Price in this case. In Barney v. Safeco Ins. Co., 73 Wash.App. 426, 430, 869 P.2d 1093 (1994), the Safeco policy did not contain an offset provision and the Court of Appeals determined that the insurer was required to make both PIP and UIM payments. Barney is readily distinguishable from our facts.
B. Confirmation of an Arbitration Award
Where a matter has been entrusted to arbitration, RCW 7.04.150 provides a superior court must confirm the award made by the arbitrators:
At any time within one year after the award is made, unless the parties shall extend the time in writing, any party to the arbitration may apply to the court for an order confirming the award, and the court shall grant such an order unless the award is beyond the jurisdiction of the court, or is vacated, modified, or corrected, as provided in RCW 7.04.160 and RCW 7.04.170.
Characterizing Farmers' entitlement to an offset for PIP benefits paid to Price here as a coverage issue, the majority states coverage issues generally may not be submitted to arbitrators, unless the parties agree, because coverage issues are exclusively within the province of the courts. Majority op. at 392-93. The majority specifically determines such coverage issues are beyond the jurisdiction of the courts in a procedure to confirm the arbitrator's award. Majority op. at 392.[2] *396 The majority's analysis of RCW 7.04.150 is far too narrow and unsupported by prior case law regarding the courts' jurisdiction under that statute. Ironically, in Barney, the PIP offset issue was decided in the context of an arbitration confirmation proceeding without controversy. See also Woodley v. Safeco Ins. Co., 84 Wash.App. 653, 659, 929 P.2d 1150 (1997) (noting a court confirming an arbitration award has authority to reduce its amount by legally available offsets); In re Arbitration of Fortin, 82 Wash.App. 74, 81-82, 914 P.2d 1209 (1996).
The courts are generally without authority under RCW 7.04 to review a decision of an arbitrator on the merits and any judicial review is confined to the grounds identified in RCW 7.04.160 and .170. Barnett v. Hicks, 119 Wash.2d 151, 153-54, 829 P.2d 1087 (1992); ACF Property Management, Inc. v. Chaussee, 69 Wash.App. 913, 918-19, 850 P.2d 1387, review denied, 122 Wash.2d 1019, 863 P.2d 1353 (1993); Martin v. Hydraulic Fishing Supply, Inc., 66 Wash.App. 370, 374, 832 P.2d 118 (1992).
But in the present action, there is no challenge to the decision of the arbitrators on the merits. The sole issue entrusted to them was the extent of Price's total damages. The court is not second-guessing the arbitrator's decision in any fashion. Rather, it is doing precisely what it is charged with doing under our system.
Our courts are courts of general jurisdiction. WASH. CONST., art. IV, § 6. This Court had jurisdiction over the parties. It had jurisdiction over the subject matter of the dispute, i.e., the offset for PIP benefits paid. The court had jurisdiction to decide the offset question in a proceeding under RCW 7.04.150 because there is no explicit statutory bar to the court's deciding a matter over which it has subject matter jurisdiction.
The majority concedes the practical effect of its decision is to require the parties, in the absence of agreement, to commence a separate action in the superior court to determine the amount and propriety of any claimed offsets and the corresponding net judgment. The majority also concedes such a process will result in bifurcated consideration of the issues in the case, thereby multiplying litigation. Majority op. at 394-395.[3] In this case, for example, in the majority's view, had there been no agreement between the parties with respect to the offset for the settlement between Price and the tortfeasor, the trial court would have been obliged to enter a judgment in the amount of $275,000 against Farmers, and Farmers would have been required *397 to file a separate lawsuit to claim its obvious offset for monies paid to Price by the tortfeasor or pursuant to the PIP protection in Price's Farmers policy. Such an approach is painfully laborious and oblivious to the costs of litigation.
RCW 7.04.150 provides for a simpler approach to this matter. The question of the plaintiffs' total damages for purposes of UIM coverage was appropriately submitted to the arbitrators here and the arbitrators found Price's total damages to be $275,000. Under RCW 7.04.150, the trial court has jurisdiction to confirm the arbitrator's award, but not to examine the merits of the arbitrators' decision except as permitted by RCW 7.04.160,.170. As part of the process of confirming an arbitration award, if the court has jurisdiction over the parties, it may also resolve any other matters over which it has subject matter jurisdiction and enter a net judgment. Cf. Woodley, 84 Wash.App. at 659-60, 929 P.2d 1150 (a court confirming an arbitration award has authority to reduce its amount by legally available offsets).
Because of an incorrect interpretation of RCW 7.04.150 and the jurisdiction of the court to consider issues such as the PIP offset issue in this case, the majority does not reach the merits of the offset for PIP benefits in this case. A proper interpretation of the jurisdiction of the court under RCW 7.04.150 indicates the trial court had jurisdiction to consider the offset for PIP benefits paid and incorrectly addressed the issue, as the Court of Appeals noted. Furthermore, even if we assume the majority is correct that the statutory limitations on the trial court's ability to disturb arbitration awards are jurisdictional, the courts may consider the offset issue under RCW 7.04.170, which provides in relevant part:
In any of the following cases, the court shall, after notice and hearing, make an order modifying or correcting the award, upon the application of any party to the arbitration:
(1) Where there was an evident miscalculation of figures....
Price and Farmers arbitrated the question of the UIM payment due to Price. Rather than being a collateral matter, the offset issue goes directly to the amount Farmers must pay in UIM benefits. The arbitration award cryptically stated: "The award in the above-referenced matter was $275,000 with Mr. Petersen dissenting." Clerk's Papers at 8. Both parties, however, have taken this amount as a statement of Price's total damages because it so clearly exceeds the amount Farmers must pay in UIM benefits. Thus, to the extent the arbitrators were asked to determine Farmer's UIM liability and they entered an amount that could not possibly be correct, the court may modify the award pursuant to the express authorization of RCW 7.04.170. By asking the superior court to disallow the offset, Price applied for modification of the award and invoked the court's authority to determine the offset issue under this statute.
I would reverse the decision of the trial court and remand the case to the trial court for entry of a judgment reflecting Farmers' entitlement to an offset for PIP benefits paid.
DURHAM, C.J., and DOLLIVER, J., concur.
NOTES
[1] If it is seriously contended by either party that that is not the case, the superior court may conduct such further proceedings as are necessary to clarify the award to assure it represents total damages. RCW 7.04.170(3); 7.04.175.
[2] This was apparently the only coverage dispute although Price conceded a reduction in the arbitrators' award by $208,415.00 (previously received from the tortfeasor) was appropriate. The parties also ultimately agreed that an award of reasonable attorney fees to Price, under these circumstances, was inappropriate, and Farmers actually paid the net award while withholding PIP.
[3] The reasons for this rule are

(a) that parties are free to decide whether they wish to use arbitration in lieu of the judicial process, (b) that they may agree on what matters they wish to submit to an arbitrator, (c) that a party is only required to arbitrate those matters which are the subject of such an arbitration agreement, and (d) that the arbitration clause in the uninsured motorist coverage terms is a clear and unambiguous agreement to submit certain specified questionsand only disputes involving those questionsto arbitration.
2 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 24.2 at 265 (2d ed.1992); see also Flood v. Country Mut. Ins. Co., 41 Ill.2d 91, 242 N.E.2d 149, 151 (1968) ("[P]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication.") (emphasis added).
[4] The arbitration provisions in the standard uninsured motorist insurance forms provide that if the claimant and the company do not agree about whether the claimant" is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then ... the matter or matters upon which such person and the company do not agree shall be settled by arbitration."

Widiss, supra § 24.1 at 263 (quoting 1966 STANDARD FORM Uninsured Motorist Endorsement: Part VI: Additional ConditionsF. Arbitration).
[5] Insurance companies use arbitration clauses in uninsured and underinsured motorist insurance because of the unique nature of these coverages. They are the only coverages predicated on the negligence of a third party. The insurer is therefore liable to its insured only in the event of damages caused by the negligence of an uninsured motorist. Insurance carriers added arbitration provisions because motor vehicle insurance policies include liability coverage as well:

The combination of liability insurance and uninsured motorist insurance in a "package policy" creates the possibility of potentially insurmountable conflicts of interest for insurers. The recognition of the potential conflict of interest problems almost certainly was the principal factor which caused the drafters of the coverage terms to introduce the arbitration provision.
Widiss, supra § 22.3 at 205.
[6] Dayton construed identical language to encompass only a dispute over tortfeasor liability or the amount of damages. Dayton, 124 Wash.2d at 279, 280, 876 P.2d 896. Were coverage questions to be resolved by agreed submittal to arbitration, the Olympic Steamship rule would apply.
[7] This assumes a valid and enforceable clause which the insurer has not waived. See Pollock v. Reserve Ins. Co., 258 So.2d 328 (Fla.Dist.Ct.App. 1972) (insurer waived arbitration provision in policy by denying coverage); Widiss, supra § 23.14 at 255 ("5. Denial of Liability/Coverage").
[8] These parties did agree that the total confirmed judgment should be reduced by $208,415.00 received from the tortfeasor, thereby resolving an uncontested coverage issue. The parties, however, did not agree to the propriety of a PIP offset, which was also a coverage issue. Cf. Widiss, supra § 24.5 at 283-94 ("Issues that are not subject to arbitration").
[9] See e.g., Anderson v. Farmers Ins. Co., 83 Wash. App. 725, 730, 923 P.2d 713 (1996); ACF Property Management, Inc. v. Chaussee, 69 Wash.App. 913, 920, 850 P.2d 1387, review denied, 122 Wash.2d 1019, 863 P.2d 1353 (1993); Sullivan v. Great Am. Ins. Co., 23 Wash.App. 242, 246, 594 P.2d 454 (1979); Teufel Constr. Co. v. American Arbitration Ass'n, 3 Wash.App. 24, 26-27, 472 P.2d 572 (1970).
[10] See, e.g., Schrader v. Grange Ins. Ass'n, 83 Wash.App. 662, 668, 922 P.2d 818 (1996), review denied, 131 Wash.2d 1007, 932 P.2d 644 (1997); In re Arbitration of Fortin, 82 Wash.App. 74, 81, 914 P.2d 1209 (1996); Barney v. Safeco Ins. Co., 73 Wash.App. 426, 430, 869 P.2d 1093 (1994); Keenan v. Industrial Indem. Ins. Co., 108 Wash.2d 314, 317, 738 P.2d 270 (1987).
[11] Subject to footnote 1, supra.
[12] See McGary v. Westlake Investors, 99 Wash.2d 280, 288, 661 P.2d 971 (1983) (award of costs inappropriate where there is no prevailing party).
[1] The majority addresses the trial court's jurisdiction under RCW 7.04.150 despite the fact Price did not properly preserve this issue for review; Price raised this issue for the first time in his petition for review, arguing the review of the trial court's confirmation award should have been limited to the specific statutory grounds for vacating or modifying an arbitration award set forth in RCW 7.04.160 and .170. See Pet. for Review at 4-7. Price never made this argument to the trial court or the Court of Appeals. While a jurisdictional issue may be raised for the first time on appeal, RAP 2.5(a), Price invited the error when he raised the PIP offset issue in his trial court pleadings and argued the policy did not contain appropriate offset language. Clerk's Papers at 2. We should not permit Price to benefit from an error he invited. See State v. Wakefield, 130 Wash.2d 464, 475, 925 P.2d 183 (1996) (doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal).
[2] A distinct flaw is present in the majority's analysis when it permits the trial court to enter a judgment recognizing an offset for Farmers in the amount of a settlement between Price and the actual tortfeasor in this case. The majority concedes the parties agreed to this offset, resolving an uncontested "coverage" issue. Majority op. at 392 n. 8. In effect, given the majority's jurisdictional analysis, the parties agreed to extend the jurisdiction of the courts to a matter beyond the court's jurisdiction, a practice expressly forbidden by numerous decisions of this Court. See, e.g., Barnett, 119 Wash.2d at 161, 829 P.2d 1087 (citing cases); Washington Local Lodge No. 104 of Int'l Bhd. of Boilermakers v. International Bhd. of Boilermakers, 28 Wash.2d 536, 544, 183 P.2d 504 (1947), adhered to, 28 Wash.2d 536, 189 P.2d 648 (1948) (if a court has no jurisdiction of an action, the parties cannot by stipulation confer it upon the court); Miles v. Chinto Mining Co., 21 Wash.2d 902, 903, 153 P.2d 856 (1944), adhered to, 21 Wash.2d 902, 156 P.2d 235 (1945) (the "universal rule" is that the parties to an action cannot, by stipulation, confer upon a court a jurisdiction with which it is not vested, citing, 14 Am.Jur. 380, § 184; Cogswell v. Hogan, 1 Wash. 4, 23 P. 835 (1890); Sawtelle v. Weymouth, 14 Wash. 21, 43 P. 1101 (1896); Seattle, L.S. & E.R. Co. v. Simpson, 19 Wash. 628, 54 P. 29 (1898); Mottet v. Stafford, 94 Wash. 572, 162 P. 1001 (1917)); State v. Diamond Tank Transp., Inc., 200 Wash. 206, 207, 93 P.2d 313 (1939); Adams v. City of Walla Walla, 196 Wash. 268, 271, 82 P.2d 584 (1938) (parties cannot stipulate a justiciable controversy exists so as to clothe this court with jurisdiction, where none exists under the pleadings and the record as made). See also Schneider v. Setzer, 74 Wash. App. 373, 872 P.2d 1158 (1994) (parties to arbitration proceeding could not, by stipulation, waive trial de novo in superior court in order to gain immediate review of arbitrator's decision in Court of Appeals); and 14 L. Orland & K. Tegland, Wash. Prac., Trial Practice § 33 at 91 (5th ed.1996).
[3] An additional glaring flaw in the majority's analysis is it may violate traditional principles of res judicata by condoning the splitting of causes of action. RCW 7.04.190 requires entry of a judgment in conformity with the order confirming the arbitration award. This judgment has the same force and effect as any other civil judgment. RCW 7.04.210.

Once a judgment has been entered, it is res judicata as to all issues associated with the cause of action upon which it is based. See Loveridge v. Fred Meyer, Inc., 125 Wash.2d 759, 763-64, 887 P.2d 898 (1995) (under the principles of res judicata, a judgment is binding upon parties to the litigation and persons in privity with those parties, precluding relitigation of claims and issues that were litigated, or might have been litigated, in a prior action).