23 P.3d 1111 (2001)
106 Wash.App. 399
LUVAAS FAMILY FARMS, a Washington limited partnership, Respondent,
v.
FERRELL FAMILY FARMS, a Washington limited partnership, Appellant.
No. 19000-5-III.
Court of Appeals of Washington, Division 3, Panel Seven.
May 29, 2001.
*1112 Catherine W. Smith, Edwards, Sieh, Smith & Goodfriend, Seattle, Donald W. Ferrell, Seattle, for Appellant.
David A. Gittins, Pike & Gittins, Clarkston, for Respondent.
SCHULTHEIS, J.
Ferrell Family Farms (Ferrell) and Luvaas Family Farms (Luvaas) owned almost 4,000 acres of farmland as tenants in common. They managed the land under a farming agreement. When Ferrell attempted to lease the land, Luvaas balked. Ferrell submitted the issue of leasing to arbitration. The arbitrators decided that leasing should be allowed, but also decided that the farming agreement could be terminated and the land partitioned. The superior court confirmed the arbitration award. On appeal, Ferrell contends the arbitrators exceeded their authority in deciding issues that were not presented to them and in negating the express terms of the farming agreement. We agree, and reverse and remand.

FACTS
Robert and Callie Ferrell were Garfield County farmers who entered into a partnership with their son and daughter-in-law, Lloyd and Helen Ferrell, and their daughter and son-in-law, Edna and Norman Luvaas, in the mid-1930s. When Robert and Callie died, the Ferrells and the Luvaases took ownership of the farmland as tenants in common. At the time of the commencement of this action, the Ferrells consisted of Helen, her son Donald and her daughter Kathleen. The Luvaases consisted of Edna's daughter, *1113 Joanne Robison, and Ms. Robison's sister's heirs.
In June 1981, the Luvaas family executed a limited partnership agreement. The partnership lists as one of its purposes the leasing of farm property. It also provides that the partnership will expire after 50 years. The Ferrells executed a limited partnership agreement in January 1982 with nearly identical terms.
Luvaas and Ferrell entered into a farming agreement in 1984. According to its opening statement, the agreement is intended
[t]o facilitate the efficient and successful management of their respective businesses, considering each party's dependence upon the other.... Additionally, the individual partners of each party being related and desiring to maintain ownership and control over the properties, the parties also desire to impose restrictions and grant certain rights regarding the transfer of a party's interest [in] the property covered by this agreement.
Clerk's Papers (CP) at 6. The farming agreement establishes that each partnership will be represented by one or two owners, who have two votes each. In most cases, a majority vote will decide matters, but under certain circumstances, the agreement requires a unanimous vote. For example, a unanimous vote is required for the "sale, exchange, assignment, conveyance, encumbrance or other transfer of both Owners' interest in the Property, other than a sale or exchange in the ordinary course of business." CP at 11. The agreement also waives the parties' rights to partition the property:
Each Owner agrees that irreparable damage would be done the other Owner and the partners of the other Owner if any Owner should bring an action in Court for the partition or sale of the Property. Care has been taken in this Agreement to provide what the parties feel are fair and just payments to be made to an Owner whose relation with the Property is terminated for any reason. Accordingly, each of the Owners accepts the provisions of this Agreement as its sole entitlement on termination of its interest in the Property. Each Owner hereby expressly waives any statutory or other rights which it may have to seek partition of the real estate and other property subject to this Agreement. Each future Owner, by acquiring an interest in the Property, whether by gift, bequest, devise, purchase or otherwise, expressly waives such right simultaneously with its acquisition, and acquires its interest subject to this Section 6.1.
CP at 15. Also relevant to this action, the agreement provides that in the event "any dispute" arises between the Owners, the dispute will be referred to arbitration. CP at 15-16.
Ms. Robison is the owner representative of Luvaas and Donald Ferrell is the owner representative of Ferrell. Acting under their direction, Gerald Magill was the farm manager for many years. In late 1998, Mr. Ferrell began to believe that Mr. Magill would be retiring soon. He asked one of the Luvaas partners, Debra Ledgerwood, if she and her husband, Ken, would be willing to lease the farm and run it for the families. Ms. Ledgerwood is Ms. Robison's niece. Although the other Luvaas partners supported the lease, Ms. Robison opposed it. As a result, Ferrell filed a notice of demand for arbitration in July 1999. The notice states as follows: "Sole issue to be arbitrated: Whether or not to lease the Owners' farm real properties to Ken & Debbie Ledgerwood beginning September 1, 1999." CP at 26.
In late July 1999, Ms. Robison filed a complaint for breach of contract and a motion to stay arbitration. The motion to stay arbitration was denied in August 1999 and the parties proceeded to arbitration later that month. Although the arbitration award approved the Ledgerwoods as tenants, it provided that Mr. Magill would continue as general manager through the 1999-2000 crop year. The parties were ordered to give leasing serious reconsideration as an option for the subsequent crop years. If, however, Luvaas and Ferrell could not reach an agreement by February 15, 2000, Ferrell was given the right to secure a suitable tenant for the farmland. The arbitration panel agreed to reconvene if the parties did not agree at that time to the suitability of the chosen tenant. At the end of this eight-page arbitration *1114 award, the panel added the language that is the subject of this appeal:
By awarding the above award, it is the hope of the Arbitration Panel the parties are able to resolve their differences in as amicable fashion as possible given the present circumstances. If this is not possible, in order that each party may control their own destiny, free from the other party, a termination of the Farming Agreement, coupled with a partition agreement, is available to either party.
CP at 47. The availability of the termination and partition options was established by the arbitrators' deletion of the farming agreement provisions prohibiting termination or partition. The arbitrators found that these provisions probably constituted unreasonable restraints on the alienation of the property.
Ferrell moved to modify the arbitration award, arguing that the panel exceeded the scope of the arbitration when they did not confine themselves to the issue of the proposed lease. RCW 7.04.170(2) (authorizing modification if the arbitrators "have awarded upon a matter not submitted to them"). The superior court's order confirming the arbitrators' award and denying the motion to modify was entered in December 1999. This appeal followed.

DISCUSSION
The purpose of arbitration is to avoid the expense and delay of litigation. Thorgaard Plumbing & Heating Co. v. County of King, 71 Wash.2d 126, 132, 426 P.2d 828 (1967); Westmark Properties, Inc. v. McGuire, 53 Wash.App. 400, 402, 766 P.2d 1146 (1989). Although the duty to arbitrate arises from contract, the parties' rights are governed by statute. Price v. Farmers Ins. Co. of Wash., 133 Wash.2d 490, 496, 946 P.2d 388 (1997); W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco, 47 Wash. App. 681, 683, 736 P.2d 1100 (1987). Judicial scrutiny of an arbitration award is strictly limited by chapter 7.04 RCW, which restricts review in the trial court and on appeal to the grounds contained in RCW 7.04.160 and .170. Barnett v. Hicks, 119 Wash.2d 151, 153-54, 829 P.2d 1087 (1992). The superior court may only confirm, vacate, modify, or correct an arbitration award according to the statutory bases. Id. at 156, 829 P.2d 1087. "If none of the statutory bases exists for vacation, modification or correction, the court must, on a motion of one of the parties within 1 year of the award, confirm the award. RCW 7.04.150." Id. at 157, 829 P.2d 1087.
RCW 7.04.170(2) provides that the trial court shall modify or correct an award "[w]here the arbitrators have awarded upon a matter not submitted to them." The arbitrators have jurisdiction to decide only those issues that the parties submit in writing to arbitration. Price, 133 Wash.2d at 496, 498, 946 P.2d 388; ACF Prop. Mgmt., Inc. v. Chaussee, 69 Wash.App. 913, 919, 850 P.2d 1387 (1993). To determine whether an issue was presented to the arbitrators, the reviewing court examines the face of the award in light of the arbitration agreement, the demand for arbitration, and any documents reflecting that demand. Hanson v. Shim, 87 Wash.App. 538, 546, 943 P.2d 322 (1997). The award does not include the arbitrators' reasons for the award. Barnett, 119 Wash.2d at 156, 829 P.2d 1087; Westmark, 53 Wash.App. at 403, 766 P.2d 1146. Accordingly, the reviewing court does not consider the merits of the case or the evidence presented to the arbitrators. Price, 133 Wash.2d at 496-97, 946 P.2d 388; Hanson, 87 Wash.App. at 546, 943 P.2d 322.
Ferrell contends the trial court was compelled to modify here because the arbitrators addressed issues that were not presented by the parties for arbitration. Ferrel's demand for arbitration states that the sole issue to be arbitrated is whether or not to lease the farm property to the Ledgerwoods beginning in September 1999. Luvaas responds that because leasing the property violates the clear prohibitions of the farming agreement, the entire agreement was by necessity fundamentally changed and the validity of all other provisions was therefore before the arbitrators. We, however, are not concerned with the reasons for the arbitrators' decisions, but only with whether the face of the resulting award is limited to the issue that was presented for arbitration. Price, 133 Wash.2d at 496-98, 946 P.2d 388.
*1115 The award here is in two general parts. First, the arbitrators found that the termination and nonpartition provisions created an "impractical contract" that may constitute an unreasonable restraint on alienation, and removed these provisions from the farming agreement. CP at 44. Second, the arbitrators provided a time frame and procedure for instituting a leasing arrangement with the Ledgerwoods or any other suitable tenants. Only the second part of the award addresses the issue presented for arbitration. Consequently, the trial court was compelled by RCW 7.04.170(2) to modify the award, limiting it to the decisions directly related to the proposed lease. Price, 133 Wash.2d at 496-97, 946 P.2d 388.
Luvaas contends Ferrell invited this error by asking the arbitrators to consider evidence of the changed economic conditions facing the parties to the farming agreement. Again, we must note that the reviewing court will not consider the evidence presented to the arbitration panel nor the reasons for its award. Davidson v. Hensen, 135 Wash.2d 112, 119, 954 P.2d 1327 (1998). Our inquiry is limited by statute to whether the award corresponds to the matter submitted to the arbitrators. RCW 7.04.170(2). The issues of the alienability of the property and the validity of the farming agreement's termination and nonpartition provisions were not submitted for arbitration. As a result, that portion of the award exceeded the arbitrators' authority and the trial court erred in confirming it. The decision of the trial court is reversed and remanded for entry of an order modifying the arbitration award pursuant to RCW 7.04.170, deleting all but the sections relating to the right to lease.
Reversed and remanded.
WE CONCUR: KURTZ, C.J., and KATO, J.