72 P.3d 220 (2003)
117 Wash.App. 438
Denise HEAPHY and Michael Chad Knesek, on behalf of themselves and all others similarly situated, Respondents,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.
No. 28345-0-II.
Court of Appeals of Washington, Division 2.
July 1, 2003.
*222 Leonard J. Feldman, Kenneth E. Payson, Heller Ehrman White & McAuliffe LLP, Seattle, for Appellant.
Stephen Michael Hansen, Tacoma, Debra Brewer Hayes, Reich & Binstock, Houston, for Respondent.
*221 ARMSTRONG, J.
State Farm and Denise Heaphy could not resolve their dispute over whether State Farm had fully compensated Heaphy under her underinsured motorists (UIM) coverage for her property damage. In addition to her repair bill, Heaphy claimed a loss for the diminished value of the vehicle. Conceding that diminished value is covered under Heaphy's policy, State Farm sought arbitration. The trial court found that the dispute focused on coverage and, accordingly, refused to order arbitration. Because State Farm has conceded coverage, we reverse and remand for the trial court to order arbitration.

FACTS
An uninsured motorist damaged Denise Heaphy's automobile in an accident. Her insurance company, State Farm, paid to repair the damage to her vehicle. At Heaphy's request, State Farm supplemented the initial payment. Still unsatisfied with the results, Heaphy sent State Farm a form letter entitled "Diminished Value Suggested Correspondence," asking State Farm to pay for "remaining damages" on her vehicle. Clerk's Papers (CP) at 122.
State Farm responded, noting that Heaphy had not provided specific diminished value items or a detailed estimate. It asked Heaphy to provide either an estimate or a detailed list of each item that was incorrectly repaired or not repaired at all. It went on, "[p]lease provide this information at your earliest convenience so that we may properly assist you and resolve your diminished value claim." CP at 123A.
Instead of supplying the information, Heaphy sued State Farm. She joined her claim with Michael Knesek, a Texas resident, and filed the claim as a class action suit. She alleged that State Farm did not pay claims for diminished value and did not inform its insureds that they had a right to diminished value payments.
Heaphy's insurance policy stated that State Farm "will pay damages for property damage an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The property damage must be caused by [an] accident arising out of the operation, maintenance or use of an underinsured motor vehicle." CP at 45 (emphasis omitted).
The policy's arbitration clause explained that:
[t]wo questions must be decided by agreement between the insured and us:
1. Is the insured legally entitled to collect damages from the owner or driver of the underinsured motor vehicle; and
2. If so, in what amount?
If there is no agreement, these questions shall be decided by arbitration upon written request of the insured or us.
CP at 47 (emphasis omitted).
State Farm asked Heaphy to agree to "arbitrate the questions of whether, and if so, in what amount, [she was] legally entitled to collect additional damages from the owners or drivers of the underinsured motor vehicles" involved in the accident. CP at 27. Heaphy refused and State Farm moved to compel arbitration.
The parties disagree about the nature of their dispute. Heaphy contends that the issue is coverage; State Farm contends that it has conceded coverage and that the issue is whether Heaphy sustained diminished value damage and, if so, the amount of the damage. Heaphy maintains that diminished value is a separate issue than property damage and that State Farm did not inspect for diminished value or even inform her that her UIM coverage included diminished value. State Farm counters that property damage, under Heaphy's policy, includes diminished value or stigma damage, but that Heaphy has not shown such damage. State Farm explains that the fact of property damage is not at issue, but the fact of diminished value damage is. It also contends that any duty to *223 disclose should be resolved after arbitration, if at all.

ANALYSIS

I. Diminished Value Claims
The meaning and construction of an insurance contract is a question of law, which we review de novo. Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 682, 801 P.2d 207 (1990). Under State Farm's policy, factual disputes about liability, injuries, and damages generally must be arbitrated. Solnicka v. Safeco Ins. Co. of Illinois, 93 Wash.App. 531, 534, 969 P.2d 124 (1999). But questions about coverage are not subject to arbitration. Solnicka, 93 Wash.App. at 534, 969 P.2d 124.
Often there "is a fine line between a coverage dispute and a claim dispute. The insurer may admit some coverage, but dispute the scope of coverage and then contend the case involves a claim dispute." Solnicka, 93 Wash.App. at 534, 969 P.2d 124. Coverage disputes include cases in which the "`extent of the benefit provided by an insurance contract' is at issue." Axess Int'l Ltd. v. Intercargo Ins. Co., 107 Wash.App. 713, 721, 30 P.3d 1 (2001) (quoting Leingang v. Pierce County Med. Bur., Inc., 131 Wash.2d 133, 147, 930 P.2d 288 (1997) (quoting McGreevy v. Or. Mut. Ins. Co., 128 Wash.2d 26, 33, 904 P.2d 731 (1995))). "Coverage questions generally concern who is insured, the type of risk insured against, or whether the insurance contract exists," as opposed to "factual questions about the extent of the insured's damages." Axess Int'l, 107 Wash.App. at 721, 30 P.3d 1.
Solnicka illustrated the distinction between coverage and factual questions in the area of personal injury protection (PIP) coverage:
PIP coverage is denied when the PIP insurer says it has no contractual duty to pay even if the insured proves that her medical expenses are reasonable and necessary. PIP coverage is not denied if the insurer, while accepting its contractual duty to pay reasonable and necessary expenses, denies that certain proposed expenses are reasonable and necessary.
Solnicka, 93 Wash.App. at 534-35, 969 P.2d 124 (quoting Kroeger v. First Nat'l Ins. Co. of Am., 80 Wash.App. 207, 209-10, 908 P.2d 371 (1995)).
Here, State Farm explicitly and repeatedly concedes on appeal that it will pay Heaphy for the diminished value of her vehicle if she can prove it. Thus, if Heaphy can establish the "difference in the value between the vehicle's pre-loss value and what its value is after it was damaged, repaired, and returned," State Farm promises, "such loss or diminution in value ... would be covered under the UIM provisions of her policy." App. br. at 14.
State Farm has accepted its contractual duty to pay, but it has denied that Heaphy has adequately shown that the proposed diminished value damages are reasonable and necessary. As explained in Solnicka, this is not a denial of coverage. Solnicka, 93 Wash. App. at 535, 969 P.2d 124. Rather, the question is to what extent, if any, was Heaphy's vehicle diminished in value due to the accident with the uninsured motorist. This is a factual question, not a coverage question; it is, therefore, arbitrable under the insurance contract and under Washington law.
This case is similar to Kraus v. Grange Ins. Ass'n, 48 Wash.App. 883, 740 P.2d 918 (1987). In Kraus, the insurance company disputed its obligation to pay under the UIM clause because it believed that Kraus's damages did not exceed the UIM limit. Kraus, 48 Wash.App. at 884-85, 740 P.2d 918. Kraus wanted to arbitrate the claim, but the insurance company wanted a trial to determine what it characterized as coverage issues. Kraus, 48 Wash.App. at 885, 740 P.2d 918. The company's theory was similar to Heaphy's theory: "that Kraus will not be entitled to collect under the [UIM] endorsement unless the damages exceed [the UIM policy limit], and therefore the extent of her damages is a question of coverage to be resolved by the court." Kraus, 48 Wash.App. at 886, 740 P.2d 918. This court disagreed, noting that the insurance company was questioning only the extent of damages, and that it "could hardly claim that whether or not the insured was damaged was a coverage question." Kraus, 48 Wash.App. at 886, 740 *224 P.2d 918. Similarly, State Farm here is questioning only the extent of Heaphy's diminished value damages. Thus, Heaphy can "hardly claim" that whether she was damaged in this way is a coverage question.
But Heaphy contends that courts must narrowly construe arbitration clauses, citing Price v. Farmers Ins. Co. of Washington, 133 Wash.2d 490, 946 P.2d 388 (1997). She reasons that the insurance contract allows arbitration only of fault or the amount of damages and does not cover State Farm's denial of property damage or causation.
Like this case, the insured and insurer in Price could not agree on the total amount of damages sustained in an auto accident with an underinsured motorist. Price, 133 Wash.2d at 493, 946 P.2d 388. An arbitration clause similar to the one here required this issue to be arbitrated. Price, 133 Wash.2d at 493, 946 P.2d 388. After the parties arbitrated the amount of damages question, Price sought statutory confirmation of the award and also asked the court to rule that the insurer could not offset against the UIM award PIP benefits it had paid him. Price, 133 Wash.2d at 492-95, 946 P.2d 388. The Supreme Court held that the trial court lacked jurisdiction to consider the offset issue because it had not been arbitrated and, under the confirmation statute,[1] the court can only modify, vacate, or correct the award. Price, 133 Wash.2d at 497, 946 P.2d 388. But the court has no "collateral authority to go behind the face of the award or to determine whether additional award amounts are appropriate." Price, 133 Wash.2d at 496-97, 946 P.2d 388.
Heaphy cites Price for its statement that "`[n]o one is under a duty to resort to arbitration unless by clear language he has so agreed.' An agreement to arbitrate will not be extended `by construction or implication.'" Price, 133 Wash.2d at 501, 946 P.2d 388 (quoting Rosenbaum v. Am. Sur. Co., 11 N.Y.2d 310, 229 N.Y.S.2d 375, 183 N.E.2d 667, 668 (1962)). This language, however, is not helpful. Heaphy agreed to arbitrate the factual issues of whether she sustained diminished value damage and, if so, the amount.
Heaphy also contends that State Farm disputes coverage by claiming that her "stigma" loss was "not [proximately] `caused by the accident,' and therefore not a covered loss under the policy." Resp. br. at 6-7. We disagree. State Farm has clearly and repeatedly conceded that diminished value, if proven, is covered under Heaphy's policy. Moreover, State Farm does not dispute the fact of property damage as a result of the accident. Thus, it is unlikely State Farm would attempt to litigate the issue of proximate cause at the arbitration. But even if it did, the question of whether the auto accident caused any of Heaphy's particular damage, including "stigma" damage, is a question of fact to be arbitrated. Solnicka, 93 Wash. App. at 534, 969 P.2d 124. Just as State Farm could challenge any specific item of physical property damage (was the bumper damaged before the accident?), so it could attempt to prove that Heaphy's diminished value claim existed before the accident (from an earlier accident?). This is not denying coverage for the claim; it is simply denying the fact of damage.

II. Alternative Grounds for Staying Arbitration
Heaphy contends that even if the diminished value issue is arbitrable, alternative grounds support the trial court's ruling. These alternative grounds are, she argues, the prohibitive cost of arbitration and the trial court's need to address class certification.
A. Cost of Arbitration
Heaphy bears the burden of showing that her case is "unsuitable for arbitration." Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 453, 45 P.3d 594 (2002). "`There is a strong public policy in Washington State favoring arbitration of disputes.'" Mendez, 111 Wash.App. at 454, 45 P.3d 594 (citation omitted). Arbitration agreements that are unconscionable, however, are not enforceable. Mendez, 111 Wash.App. at 458, 45 P.3d 594.
*225 In Mendez, the trial court denied the insurer's motion to compel arbitration because of the prohibitive entry costs of arbitration. Mendez, 111 Wash.App. at 449, 460, 45 P.3d 594. The party opposing arbitration bears the initial burden of showing such a prohibitive expense. Mendez, 111 Wash. App. at 462, 45 P.3d 594. Mendez's evidence made the court "reasonably sure by prima facie proof that Mr. Mendez would have been required to spend up front well over $2,000... to resolve a potential $1,500 dispute." Mendez, 111 Wash.App. at 465, 45 P.3d 594. The court upheld the trial court's determination that requiring Mendez, who had proven his limited financial means, to arbitrate his claim was unconscionable. Mendez, 111 Wash.App. at 465, 45 P.3d 594.
Mendez submitted an affidavit about his financial circumstances. His contract required him to use AAA for arbitration, and he submitted information from the AAA office about their costs. Mendez, 111 Wash. App. at 452, 465, 45 P.3d 594. In contrast, Heaphy submitted no information regarding her own financial circumstances or the costs of arbitration. The Mendez court refused to use another case's factual determinations about the cost of arbitration, and we refuse Heaphy's request to do the same. Mendez, 111 Wash.App. at 462, 45 P.3d 594. As State Farm notes, Heaphy's contract does not require her to use AAA, and other arbitrators are significantly less expensive. Moreover, State Farm has offered "to pay the arbitration fees incurred in arbitrating its dispute with Ms. Heaphy." App. Reply Br. at 20.
Absent any evidence of prohibitive costs, Heaphy's objection to arbitration on this ground fails.
B. Class Certification
Finally, Heaphy contends that a trial court must resolve the class action issue before sending the case to arbitration. She relies on Price's policy arguments requiring narrow construction of UIM arbitration clauses and she argues that the trial court must determine certification issues. This argument works together with the cost-of-arbitration argument, she contends, because damages in any one case are too small to pursue outside of a class action.
Heaphy relies on California cases to support her argument. State Farm contends that a Washington case disposes of this issue. Stein v. Geonerco, Inc., 105 Wash.App. 41, 17 P.3d 1266 (2001).
Stein noted that whether an arbitration clause is unenforceable because it prevented a plaintiff from bringing a class action was one of first impression in Washington. Stein, 105 Wash.App. at 48, 17 P.3d 1266. But because the arbitration clause, which required all disputes to be arbitrated, was silent on class action and because Stein did not "demonstrate a conflict with statutory provisions, contract law, or due process requirements," the court enforced the arbitration clause. Stein, 105 Wash.App. at 49, 17 P.3d 1266. The court also refused to compel class action arbitration because no statutes or cases supported Stein's right to class arbitration and the contract did not provide for it. Stein, 105 Wash.App. at 49-50, 17 P.3d 1266.
Heaphy argues, nevertheless, that Stein does not apply because the arbitration clause there sent the entire case to arbitration, rather than certain discrete issues like the clause here. Although Stein focused on the fact that the clause encompassed all disputes, Heaphy offers no persuasive argument why the law should be different when the clause orders arbitration on only some issues.
More importantly, this case, in its present posture, is inappropriate for a class action lawsuit. A class member may sue on behalf of a class only if, among other requirements, "there are questions of law or fact common to the class." CR 23(a)(2). While a class action may be appropriate to determine whether diminished value damages are covered by State Farm's UIM policy, that is not the issue here. Rather, the issue is a factual one: Does the evidence show that Heaphy's vehicle suffered diminished value damages? If the answer is yes, State Farm has conceded that its policy covers these damages. Thus, Heaphy has no question of law in common with others. And Heaphy has not shown that other class members share common issues of fact.
*226 Absent any showing that a class action is appropriate for this case, the possibility of class certification cannot overcome the agreement to arbitrate the issue.
Reversed and remanded for the trial court to order arbitration.
We concur: SEINFELD, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] RCW 7.04.150.