[No. 23184-4-III.   Division Three.   February 17, 2005.]

SUZY DIX, ET AL., *Individually and on Behalf of All Others Similarly Situated, Appellants*, v. ICT GROUP, INC., ET AL., *Respondents.*

930

*David L. Broom, Richard W. Kuhling, William J. Schroeder,* and *Gregory C. Hesler* (of *Paine Hamblen Coffin Brooke & Miller, L.L.P.*) and *Michael D. Kinkley* (of *Michael D. Kinkley, P.S.*), for appellants.

*James B. King* (of *Keefe, King & Bowman, P.S.*) (*Daniel T. Donovan* and *John C. O'Quinn* of *Kirkland & Ellis,* of counsel), for respondents.

¶1 KATO, C.J. — Suzy Dix and Jeffrey Smith appeal the trial court's CR 12 dismissal of their claims. The dismissal was based on a contractual forum selection clause specifying Virginia as the proper forum for litigation. We reverse and remand.

¶2 America Online, Inc. (AOL), is an internet service provider. Before becoming an AOL member and using its online services, an individual must choose to accept the Terms of Service Agreement (TOS) by clicking the "I agree" button while registering for a membership. Clerk's Papers (CP) at 45, 162. One provision of the TOS is a forum selection clause which states: "You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of the AOL Services resides in the courts of Virginia." CP at 57. After the membership account is created, an individual

establishes the account under a master screen name, which is also the individual's e-mail address. AOL allows each master account to include up to six additional e-mail addresses, each with its own secondary screen name. Periodically, when the AOL Web browser is being used, a pop-up box is displayed asking the user if he or she wishes to create a new account using one of the secondary screen names. The pop-up box has two options: the user can either click on a button that says "I agree" or a button that says "Tell me more." CP at 164. The only way to close the pop-up box, without choosing either option, is to click on a small "x" in the upper right corner of the box.

¶3 Ms. Dix and Mr. Smith claim they did not elect to create new accounts, but AOL nonetheless created secondary ones from their original accounts without their permission and billed them for the additional accounts. When they called AOL to complain, their calls were handled by ICT Group, Inc., a third party company used by AOL to handle customer service calls from its subscribers. ICT is located in Spokane. Ms. Dix and Mr. Smith claim ICT refused to believe they did not create the secondary accounts and offered them only two months of free service rather than a full refund for the erroneous billing.

¶4 On July 29, 2003, Ms. Dix and Mr. Smith filed a class action lawsuit against AOL and ICT.[1] On August 27, AOL filed a petition for removal to federal court based on diversity jurisdiction. On October 20, concluding it did not have removal jurisdiction, the federal court remanded the case to state court. *Dix v. ICT Group, Inc.*, 2003 WL 22852135, 2003 U.S. Dist. LEXIS 21679. On October 31, AOL filed a motion to dismiss in state court based on the forum selection clause. On January 5, 2004, the trial court issued a letter opinion determining the forum selection clause was valid and dismissed the suit without prejudice.

---

[1] Ms. Dix and Mr. Smith have filed this purported class action "on behalf of themselves and all others similarly situated." CP at 7. They state that the class was never certified because AOL did not file an answer to the suit. We do not decide whether this case may proceed as a class action.

On January 23, 2004 the trial court's letter opinion was incorporated into a final judgment of dismissal. This appeal follows.

¶5 Initially, AOL contends Ms. Dix and Mr. Smith's notice of appeal was untimely because it was filed on February 17, 2004, more than 30 days after the trial court entered its January 5 letter opinion. Relying on *Steinmetz v. Call Realty, Inc.*, 107 Wn. App. 307, 310-12, 23 P.3d 1115 (2001), AOL seeks dismissal of the appeal.

■ ¶6 A notice of appeal must be filed within 30 days of the decision which the party filing the notice wants reviewed. RAP 5.2(a). Generally, however, a memorandum decision is not a final, appealable order. *Chandler v. Doran Co.*, 44 Wn.2d 396, 400, 267 P.2d 907 (1954); *In re Estate of Christensen*, 77 Wash. 629, 630, 138 P. 1 (1914); *see also Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978). A memorandum decision is an expression of the opinion of the court and should be considered only as a direction to counsel in the preparation of a final order. *Chandler*, 44 Wn.2d at 400. An appeal cannot be taken until the formal order is entered. *Id.* Here, the trial judge issued both an opinion letter and later a final judgment of dismissal on January 23, 2004, incorporating the letter. The final, appealable order was the order of dismissal entered on January 23, not the trial court's letter opinion issued on January 5. The notice of appeal was timely filed.

¶7 Ms. Dix and Mr. Smith contend the trial court erred in dismissing their lawsuit based on the forum selection clause. They assert the forum selection clause in the TOS agreement is not enforceable and the trial court erred in concluding Virginia was the appropriate forum in which to litigate their dispute.

■ ¶8 The parties disagree on the proper standard of review. Ms. Dix and Mr. Smith argue de novo review is proper, while AOL argues the trial court's decision to enforce a forum selection clause is reviewed for an abuse of discretion. Washington courts have either applied the abuse of discretion standard or have concluded the forum selec-

tion clause should be enforced without determining the appropriate standard of review. *Bank of Am., N.A. v. Miller*, 108 Wn. App. 745, 748, 33 P.3d 91 (2001) (concluding the burden of proof was not met, regardless of the standard of review); *Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 617-21, 937 P.2d 1158 (1997) (enforcing an agreement to litigate in Nevada without discussing the standard of review); *Exum v. Vantage Press, Inc.*, 17 Wn. App. 477, 479, 563 P.2d 1314 (1977) (reviewing for an abuse of discretion the trial court's decision not to enforce a contract provision naming New York as the forum state). Because the only standard of review explicitly applied in situations involving forum selection clauses is the abuse of discretion standard, we conclude that the de novo standard does not apply. We accordingly review the trial court's decision for an abuse of discretion.

¶9 "In deciding a motion to dismiss based on a forum selection clause, the court does not accept the pleadings as true. Rather, the party challenging the clause must present evidence to justify its nonenforcement." *Voicelink*, 86 Wn. App. at 618. Washington courts will enforce a forum selection clause unless it is deemed unfair and unreasonable. *Exum*, 17 Wn. App. at 478-79. The party seeking to invalidate such a clause "bears a heavy burden of showing that trial in the chosen forum would be so seriously inconvenient as to deprive the party of a meaningful day in court." *Miller*, 108 Wn. App. at 748. Absent evidence of fraud, undue influence, or unfair bargaining power, courts are reluctant to invalidate forum selection clauses because they serve the purpose of enhancing contractual predictability. *Id.*

¶10 Ms. Dix and Mr. Smith first contend that because AOL unilaterally created the secondary accounts, the TOS from the original account does not apply and they are not required to litigate their dispute in Virginia. They assert that enforcement of the forum selection clause is unreasonable and unjust because the secondary accounts were a product of fraud and deception and they were not

provided an opportunity to enter into a new TOS agreement for these secondary accounts. But the original membership agreement entered into by Ms. Dix and Mr. Smith defined "account" as "[t]he original account you open when you register for AOL membership through which you obtain access to the AOL Online Service and other AOL services, *and all sub-accounts or other accounts opened under your original account.*" CP at 48 (emphasis added). According to the agreement, "[t]his Membership Agreement, as published over the AOL Online Service, the terms provided at registration and billing terms posted on the AOL Online Service constitute the entire and only agreement regarding your AOL membership and your Account." CP at 56. Because the terms of service listed in the original membership agreement expressly apply to all accounts related to the original account, the forum selection clause contained in the original membership also applies to the secondary accounts.

¶11 Ms. Dix and Mr. Smith further contend that enforcing the forum selection clause violates Washington public policy as expressed in the Consumer Protection Act (CPA), chapter 19.86 RCW. They assert that because class action suits are not available in Virginia and the amount of damages suffered by each individual is probably less than $250, Washington consumers have little incentive to litigate in Virginia, thereby violating the CPA's public policy of protecting this state's citizens from unfair and deceptive business practices. While there are no Washington cases on point, at least three other jurisdictions have dealt with this issue when deciding the enforceability of the AOL forum selection clause.

¶12 In *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001), the plaintiffs sought relief from the AOL forum selection clause under the California Consumers Legal Remedies Act (CLRA). In holding that the forum selection clause was unenforceable, the California Court of Appeals stated the enforcement of a contractual forum selection clause was the functional

equivalent of a contractual waiver of the consumer protections under the CLRA. The court also compared Virginia and California laws and concluded that Virginia consumer protection laws were far less protective than California laws and that, because Virginia law does not allow consumer lawsuits to be brought as class actions and the available remedies are more limited than those afforded by California law, the rights of the California consumer class members would be substantially diminished if they were required to litigate their disputes in Virginia, thus violating the important public policy underlying California's consumer protection laws.

¶13 On the other hand, Maryland courts have held that the unavailability of a class action lawsuit in Virginia does not defeat the forum selection clause since individuals still have a remedy in the Virginia courts. *Koch v. Am. Online, Inc.*, 139 F. Supp. 2d 690 (D. Md. 2000); *Gilman v. Wheat, First Secs., Inc.*, 345 Md. 361, 692 A.2d 454 (1997). Florida courts, however, are divided over the enforceability of the AOL forum selection clause due to the unavailability of class actions in Virginia.

■■ ¶14 In *America Online, Inc. v. Pasieka*, 870 So. 2d 170 (Fla. Dist. Ct. App. 2004), the plaintiffs filed a class action under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201-.213 and Florida Free Gift Advertising Law (FFGAL), Fla. Stat. § 817.415. In declining not to enforce the forum selection clause, the court held the FDUTPA and the FFGAL were designed to afford broad protection to all citizens of the state, rather than individual parties. *Pasieka*, 870 So.2d at 171-72. Therefore, the effectiveness of these statutes would be seriously undermined if claims were required to be brought in another state. *Id.*; *see also Miles v. Am. Online, Inc.*, 202 F.R.D. 297 (M.D. Fla. 2001) (declining to enforce the forum selection clause in a class action lawsuit brought under consumer protection statutes). In *America Online, Inc. v. Booker*, 781 So. 2d 423 (Fla. Dist. Ct. App. 2001), the plaintiffs filed a class action lawsuit alleging breach of

contract. But in enforcing the forum selection clause, the court ruled that the unavailability of a class action procedure was not sufficient, standing alone, to render a valid forum selection clause unenforceable. *Id.* at 425. In light of the policy behind Washington's CPA, we find the reasoning in *Superior Court* and *Pasieka* persuasive. Here, Ms. Dix and Mr. Smith filed their purported class action alleging, among other claims, a violation of the CPA. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. Because its purpose is "to protect the public and foster fair and honest competition," RCW 19.86.920, the CPA does not exist merely for the purpose of benefiting an individual plaintiff. Rather, the statute's purpose is to offer broad protection to the citizens of Washington from unfair or deceptive acts or practices. RCW 19.86.920; *In re Charter First Mortgage, Inc.*, 42 B.R. 380 (Bankr. D. Or. 1984) (discussing the Washington CPA). Requiring Ms. Dix and Mr. Smith to litigate their CPA claim in Virginia without the benefit of a class action procedure as is allowed in Washington therefore undermines the very purpose of the CPA, which is to offer broad protection to the citizens of Washington.[2] The forum selection clause is unenforceable.

¶15 The trial court's dismissal of claims against ICT and AOL is reversed and the case remanded for further proceedings.

SWEENEY and SCHULTHEIS, JJ., concur.

Reconsideration denied April 14, 2005.

Review granted at 155 Wn.2d 1024 (2005).

---

[2] Ms. Dix and Mr. Smith also contend the trial court erred by dismissing their claims against ICT. The trial court concluded ICT was an agent of AOL, AOL was an indispensable party, and claims against ICT could not stand alone as AOL was subject to suit only in Virginia. Because we decide AOL's forum selection clause is unenforceable, the trial court's dismissal of ICT based on the clause's validity cannot stand.