[No. 77101-4. En Banc.]
Argued February 28, 2006. Decided July 12, 2007.

SUZY DIX ET AL., *Respondents*, v. ICT GROUP, INC., ET AL., *Petitioners*.

*James B. King* (*Daniel T. Donovan, John C. O'Quinn,* and *Eugene F. Assaf* of *Kirkland & Ellis,* of counsel), for petitioners.

*Richard W. Kuhling, David L. Broom, William J. Schroeder,* and *Gregory C. Hesler* (of *Paine Hamblen Coffin Brooke & Miller, LLP*) and *Michael D. Kinkley* (of *Michael D. Kinkley, PS*), for respondents.

*Robert M. McKenna, Attorney General,* and *Shannon E. Smith, Senior Counsel,* on behalf of the Attorney General's Office, amicus curiae.

*Bryan P. Harnetiaux* and *Kelby D. Fletcher* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 MADSEN, J. — The plaintiffs in this case allege that America Online, Inc. (AOL) unilaterally and wrongfully created and charged them for secondary membership accounts. The plaintiffs brought a putative class suit in Washington courts, alleging, among other things, violations of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. However, the terms of service (TOS) agreement between the plaintiffs and AOL contains a forum selection clause specifying Virginia as the forum for any suits relating to the membership services. Virginia does not allow class actions for suits like plaintiffs' suit. The trial court dismissed the action on the basis that the forum selection

clause requires suit to be brought in Virginia. On appeal, the Court of Appeals reversed, holding that the forum selection clause is unenforceable because the selected forum does not permit class suits, thus violating public policy underlying the CPA. We affirm the Court of Appeals, but on narrower grounds.

## FACTS

¶2 Suzy Dix and Jeffrey R. Smith (plaintiffs) chose AOL as their Internet service provider. To obtain AOL membership, each selected a master, or primary, screen name for the membership, designated a method of payment (credit card, debit card, electronic fund transfer, or automatic billing to a telephone number), and consented to an online contract, the TOS agreement. The monthly charge under the pricing plan then in effect was $23.90 for unlimited access, with an additional $5.00 charge for plans paid for through electronic transfer or telephone billing. Under plaintiffs' plan, a primary account holder can select up to six "secondary screen names," permitting, for example, separate e-mail accounts that the primary account holder or another person (such as a family member or roommate) can use. An AOL member can also convert a secondary screen name into a separate AOL account, which is a new membership account subject to a separate monthly charge.

¶3 The TOS agreement covering the primary account contains a forum selection clause:

> You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of the AOL Services resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or AOL Services. The foregoing provision may not apply to you depending on the laws of your jurisdiction.

Clerk's Papers (CP) at 57.

¶4 The plaintiffs allege that AOL randomly used secondary screen names in "pop-up" advertisement screens, inviting the user to create a new membership using the secondary screen name for the new account, i.e., to "spin off" the secondary screen name into a new AOL membership. The plaintiffs assert that most users do not want to create a new account and, when presented with the pop-up, users simply want to get rid of it. They say that the pop-up often has an "I agree" or a "Tell me more" button, but has no button to decline. Plaintiffs maintain that users who do not want a secondary account could choose the "x" in the upper right hand corner of the pop-up, attempt to close the AOL program completely, or shut down the computer. The plaintiffs allege that AOL nevertheless unilaterally and automatically "spins off" the advertised secondary name into a new AOL membership. Plaintiffs assert that once a member realizes that he or she is being billed for two accounts, the member calls AOL using a 1-800 telephone number provided by AOL, which actually connects to an employee of defendant ICT Group, Inc., at a center in eastern Washington.

¶5 Plaintiffs claim that ICT is an agent of AOL hired to handle customer service inquiries. Plaintiffs allege that ICT's employees are trained to engage in deceptive practices, specifically, to recognize calls relating to spun-off secondary accounts, to provide no meaningful assistance, to convince the caller that he or she or someone in the household created the secondary account, and to offer relief in the case of only the most insistent customers and then only in the form of free future AOL service for a short period of time.

¶6 In support of their allegations, Dix and Smith have submitted their declarations and declarations of other members of the putative class, and declarations of former ICT employees.

¶7 On July 29, 2003, Dix and Smith filed a class suit against AOL and ICT on behalf of themselves and all others similarly situated, alleging conversion, unjust enrichment,

and violation of the CPA.[1] As to the latter, they alleged in their complaint that ICT as agent and AOL as principal engaged in unfair and deceptive acts and practices by creating unauthorized spun-off accounts, charging customers for them, and failing to fully credit customers for the improperly spun-off accounts; that these unfair and deceptive acts and practices occurred in trade or commerce in the course of AOL's business and impacted the public interest; and that plaintiffs Dix and Smith and other members of the putative class were damaged as a direct result of AOL's and ICT's unfair and deceptive acts and practices. They alleged that "[t]he amount of damages suffered by each individual class member is relatively small, generally ranging from $23.90 to less than $250.00, such that it is impracticable and inefficient for each class member to maintain a separate action." CP at 13. In their declarations, Dix and Smith each claim damages under $100.00.[2]

¶8 AOL and ICT moved for dismissal under CR 12(b) based on the forum selection clause or the doctrine of forum non conveniens. The trial court granted the motion to dismiss the action against AOL on the basis that the forum selection clause is valid and enforceable. The court also dismissed the claims against ICT on the ground that as an agent of AOL, ICT was entitled to the same defenses as AOL.[3]

¶9 Dix and Smith sought direct review by this court, which instead transferred the case to the Court of Appeals.

---

[1] The plaintiffs say that the class was never certified because AOL never filed an answer.

[2] AOL and ICT filed a petition to remove the case to the Federal District Court for the Eastern District of Washington based on diversity jurisdiction and also moved for a change of venue to federal court in Virginia. The plaintiffs moved for remand to state court on the ground that the federal court lacked subject matter jurisdiction. The federal court granted plaintiffs' motion on the basis that the diversity amount was not satisfied since plaintiffs' claims could not be aggregated and the amount in controversy as to each plaintiff was less than $75,000. The federal court remanded to state court. *Dix v. ICT Group, Inc.*, 2003 U.S. Dist. LEXIS 21679 (E.D. Wash. Oct. 20, 2003).

[3] The court additionally reasoned that AOL was an indispensable party to the plaintiffs' action against ICT.

The Court of Appeals reversed, holding that the forum selection clause is not enforceable because the selected forum does not permit class suits and thus the clause violates public policy underlying the CPA. *Dix v. ICT Group, Inc.*, 125 Wn. App. 929, 106 P.3d 841 (2005).

¶10 The day after the Court of Appeals' decision was filed, the Class Action Fairness Act of 2005 (CAFA) was signed into law. Pub. L. No. 109-2, 119 Stat. 4 (2005). CAFA amended 28 U.S.C. § 1332 and expanded provisions for class suits in federal courts. AOL and ICT moved for reconsideration of the Court of Appeals' decision on the basis that a class suit in federal court was now possible in Virginia. The motion for reconsideration was denied.

¶11 AOL and ICT then sought discretionary review in this court; their petition for review was granted. The Attorney General of Washington and the Washington State Trial Lawyers Association Foundation have filed amicus curiae briefs.

## ANALYSIS

¶12 The Court of Appeals applied an abuse of discretion standard of review in this case on the basis that it is the only standard expressly applied in any previous Washington decision assessing the validity of forum selection clauses. *Dix*, 125 Wn. App. at 933-34, ¶ 8; *see Exum v. Vantage Press, Inc.*, 17 Wn. App. 477, 479, 563 P.2d 1314 (1977) (applying abuse of discretion standard). As the court noted, in other cases the Court of Appeals had reasoned that under either a de novo standard or an abuse of discretion standard, the trial court correctly determined that the party challenging a forum selection clause had not met the burden of establishing its unenforceability. *Bank of Am., NA v. Miller*, 108 Wn. App. 745, 748, 33 P.3d 91 (2001); *Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 617, 937 P.2d 1158 (1997).

¶13 Other jurisdictions are split over whether a de novo or abuse of discretion standard applies when reviewing

decisions on enforceability of forum selection clauses.[4] Some courts applying a de novo review standard explain that they do so because forum selection clauses often require contract interpretation and analysis of fundamental fairness and public policy. *E.g.*, *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1290-91 (11th Cir. 1998). Some courts applying an abuse of discretion standard explain that disposition of such cases is highly fact specific. *E.g.*, *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 776, 501 S.E.2d 353 (1998). Courts are also split over the appropriate method of pleading a motion for dismissal under a forum selection clause.[5]

¶14 We conclude that generally the abuse of discretion standard applies. Under this standard of review, a trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis, it necessarily abuses its discretion. *Id.*; *State v. Kinneman*, 155 Wn.2d 272, 289, ¶ 35, 119 P.3d 350 (2005). Thus, the abuse of discretion standard gives deference to a trial court's fact-specific determination on enforceability of a forum selection clause, while permitting reversal where an incorrect legal standard is applied. If, however, a pure question of law is presented, such as whether public policy precludes giving effect to a forum selection clause in particular circumstances, a de

---

[4] *See, e.g.*, *O'Brien Eng'g Co. v. Cont'l Machs., Inc.*, 738 So. 2d 844, 846 n.2 (Ala. 1999) (listing cases); *Titan Indem. Co. v. Hood*, 895 So. 2d 138, 145 (Miss. 2004) (same).

[5] The Eleventh Circuit has noted that the federal circuits have treated a motion to dismiss under a forum selection clause as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (Second Circuit), a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) (Ninth Circuit), and a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) (First Circuit). *Lipcon*, 148 F.3d at 1289-90 (citing cases). The court also noted that a number of other courts have avoided the question of the appropriate form of the pleading, holding simply that a de novo standard of review applies. *Id.* at 1289 (citing cases from the Fifth, Sixth, and Tenth Circuits).

novo standard of review should be applied as to that question. *See Ang v. Martin,* 154 Wn.2d 477, 481, ¶ 9, 114 P.3d 637 (2005) (questions of law are reviewed de novo); *Motor Contract Co. v. Van Der Volgen,* 162 Wash. 449, 454, 298 P. 705 (1931) (question whether a contract is against public policy is a question of law).

■ ¶15 Forum selection clauses are prima facie valid. *Kysar v. Lambert,* 76 Wn. App. 470, 484-85, 887 P.2d 431 (1995); *see Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). In general, a forum selection clause may be enforced even if it is in a standard form consumer contract not subject to negotiation. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 589-95, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991). "[E]nforcement of forum selection clauses serves the salutary purpose of enhancing contractual predictability." *Voicelink,* 86 Wn. App. at 617; *see Carnival Cruise Lines,* 499 U.S. at 593-94. Additionally, such clauses may reduce the costs of doing business, thus resulting in reduced prices to consumers. *Id.* at 594.

■ ■ ¶16 A number of courts rely on the analyses in *Bremen* and *Carnival Cruise Lines* for determining the enforceability of a forum selection clause. A typical synthesis of the *Bremen* and *Carnival Cruise Lines* analyses that has been set out by a number of courts is as follows:

> (1) [A] forum-selection clause is presumptively valid and enforceable and the party resisting it has the burden of demonstrating that it is unreasonable, (2) a court may deny enforcement of such a clause upon a clear showing that, in the particular circumstance, enforcement would be unreasonable, and (3) the clause may be found to be unreasonable if (i) it was induced by fraud or overreaching, (ii) the contractually selected forum is so unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or of its day in court, or (iii) enforcement would contravene a strong public policy of the State where the action is filed.

*Gilman v. Wheat, First Sec., Inc.,* 345 Md. 361, 378, 692 A.2d 454 (1997) (discussing *Bremen, Carnival Cruise Lines,* and their progeny).

¶17 We agree with this analysis, which is generally in agreement with statements in this state's appellate decisions. *See Bank of Am.*, 108 Wn. App. at 748 (a "party arguing that the forum selection clause is unfair or unreasonable bears a heavy burden of showing that trial in the chosen forum would be so seriously inconvenient as to deprive the party of a meaningful day in court"; "[a]bsent evidence of fraud, undue influence, or unfair bargaining power, courts are reluctant to invalidate forum selection clauses as they increase contractual predictability"); *Voicelink*, 86 Wn. App. 613 (forum selection clauses are enforced unless they are unreasonable and unjust; resisting party has the heavy burden of proof; unreasonableness may be shown by evidence of fraud, undue influence, overweening bargaining power, or such serious inconvenience as to deprive the party of a meaningful day in court); *see also Exum*, 17 Wn. App. 477.

¶18 In assessing a forum selection clause for enforceability, the court does not accept the pleadings as true. *Bank of Am.*, 108 Wn. App. at 748; *Voicelink*, 86 Wn. App. at 618. Rather, the challenging party must present evidence to justify nonenforcement. *Voicelink*, 86 Wn. App. at 618.

¶19 In holding that the forum selection clause at issue here violates public policy embodied in the CPA, the Court of Appeals reasoned that the CPA was designed to offer broad protection to all citizens of the state from unfair methods of competition and unfair or deceptive acts or practices in conducting trade or commerce, rather than merely to provide protection for individual parties, and its purpose would be undermined if claims must be brought in another state without the benefit of a class action procedure. *Dix*, 125 Wn. App. at 936-37, ¶ 14.

¶20 AOL[6] argues, however, that the only question here relating to enforceability of the forum selection clause is whether enforcement "would be so seriously inconvenient as to deprive the party of a meaningful day in court." *Bank*

---

[6] "AOL" refers to both defendants.

*of Am.*, 108 Wn. App. at 748. AOL describes the Court of Appeals' basis for invalidating the forum selection clause as "newly articulated public policy." Pet. for Review at 8. AOL says that class suits have always been the exception, not the rule, both in Washington and nationally. AOL maintains that no Washington statute or case articulates the public policy basis relied on by the Court of Appeals in invalidating the forum selection clause.

¶21 We agree with the United States Supreme Court that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15. The stated purpose of the CPA is "to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920. The legislature declared its intent "that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor be construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se." *Id.* To achieve its purposes, the CPA is to be "liberally construed that its beneficial purposes may be served." *Id.*

¶22 Prior to 1970, the CPA did not allow private suits for damages for violations of RCW 19.86.020, which provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." In 1970, the legislature recognized the need for an additional enforcement mechanism and amended RCW 19.86.090 to provide for a private right of action to recover damages for and enjoin violations of RCW 19.86.020. LAWS OF 1970, 1st Ex. Sess., ch. 26, § 2. Under the amendment, "individual citizens would be encouraged to bring suit to enforce the CPA." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d

778, 784, 719 P.2d 531 (1986); *see also Lightfoot v. MacDonald*, 86 Wn.2d 331, 335-36, 544 P.2d 88 (1976) (the private right of action is designed to "enlist the aid of private individuals . . . to assist in the enforcement" of the CPA).

¶23 The private right of action to enforce RCW 19.86.020 is more than a means for vindicating the rights of the individual plaintiff. In order to prevail in a private action under the CPA, the plaintiff must show that the challenged acts or practices affect the public interest. *Hangman Ridge*, 105 Wn.2d at 788. That the private right of action is for the purpose of enforcement for the public as a whole is also demonstrated by the fact that a private consumer can obtain injunctive relief even if that injunction would not affect that particular consumer's private interests. *Hockley v. Hargitt*, 82 Wn.2d 337, 349-50, 510 P.2d 1123 (1973).

¶24 The individual consumer action to enforce RCW 19.86.020 and vindicate the public interest is thus a significant aspect of a dual enforcement scheme under the CPA, which provides for individual private actions in addition to enforcement actions brought by the attorney general. But in some circumstances, the costs and inconvenience of suit may be too great for individual actions, even in small claims court. We agree, therefore, that class suits are an important tool for carrying out the dual enforcement scheme of the CPA. Individual claims may be so small that it otherwise would be impracticable to bring them; a class action may be the only means that the public interest may be vindicated.

■ ¶25 Given the importance of the private right of action to enforce the CPA for the protection of all the citizens of the state, we conclude that a forum selection clause that seriously impairs a plaintiff's ability to bring suit to enforce the CPA violates the public policy of this state. It follows, therefore, that a forum selection clause that seriously impairs the plaintiff's ability to go forward on a claim of small value by eliminating class suits in circumstances where there is no feasible alternative for seeking relief violates public policy and is unenforceable.

¶26 AOL contends, however, that the Court of Appeals in this state has previously determined that contractual forum selection provisions can and do preempt the use of class action procedures. AOL relies on *Stein v. Geonerco, Inc.*, 105 Wn. App. 41, 17 P.3d 1266 (2001) and *Heaphy v. State Farm Mut. Auto. Ins. Co.*, 117 Wn. App. 438, 72 P.3d 220 (2003).[7] In *Stein*, the plaintiff brought suit under the CPA against the seller of a home he bought that had defects in the siding. The seller moved to compel arbitration under an arbitration agreement between the parties that was silent on the question whether a class procedure could be used. The plaintiff argued that the arbitration clause was unenforceable because it prevented him from bringing a class suit. The court disagreed and enforced the arbitration clause as written, both because the clause was silent on the question of a class action and because the plaintiff failed to demonstrate any conflict with statutory provisions, contract law, or due process requirements. *Stein*, 105 Wn. App. at 49. The court also declined to permit arbitration on a classwide basis because the plaintiff had failed to cite relevant statutory provisions authorizing class arbitration. *Id.* at 50. In *Heaphy*, the court disagreed with the plaintiffs' claim that the ruling in *Stein* did not apply, and, "[m]ore importantly," found that the plaintiff had failed to show that there were any questions of law or fact common to a class, as is required for a class suit. *Heaphy*, 117 Wn. App. at 447-48. Accordingly, the "possibility" of class certification could not overcome the agreement to arbitrate. *Id.* at 448.

¶27 *Heaphy* is not a CPA case, and it does not involve individually small consumer claims; it is thus unlike the present case. In *Stein*, the court noted that the plaintiff had not argued any due process or policy grounds for permitting class arbitration and therefore the court did not address them. *Stein*, 105 Wn. App. at 50 n.2. Here, in contrast, the

---

[7] Each of these cases involved an arbitration clause. Courts have reasoned that an arbitration clause is, in effect, a specialized kind of forum selection clause. *E.g.*, *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974).

plaintiffs do advance public policy grounds for nonenforcement of the forum selection clause, based on its effect of precluding class suits. Neither *Heaphy* nor *Stein* is persuasive in the context here.

¶28 We note that other courts are split on the question whether forum selection clauses are unenforceable when they preclude class actions in the consumer setting. In *America Online, Inc. v. Pasieka*, 870 So. 2d 170 (Fla. Dist. Ct. App. 2004), the court found AOL's forum selection clause requiring suit be brought in Virginia to be unenforceable where the action was a class suit under the state's consumer protection laws. The court noted that such laws do not exist merely for the benefit of the individual parties but rather for the purpose of providing broader protection for the citizens of Florida as a whole. *Id*. at 171-72. The court noted the importance of class suits to further the goals of such laws, given the small monetary amounts involved, because most individual plaintiffs likely would not pursue claims in Virginia. *Id*. at 171.

¶29 Similarly, the court in *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001), held a forum selection clause unenforceable because it violated fundamental California policy embodied in the state's consumer protection law. The plaintiff sought class action relief under the state's Consumers Legal Remedies Act, which contains a provision for class suits, and also contains an antiwaiver provision declaring waiver of any provision of the act to be against public policy and void. The court said that "California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy." *Id*. at 12. The court discussed the importance of class suits in consumer litigation, where individual actions by each of numerous defrauded consumers would be impracticable because the amount of the individual recovery would be insufficient to justify bringing a separate action. *Id*. at 17. The " 'unscrupulous seller' " would then retain benefits of its wrongful conduct. *Id*.

(quoting *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808, 484 P.2d 964, 94 Cal. Rptr. 796 (1971)). The court observed that " '[a] class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims.' " *Id.* (quoting *Vasquez*, 4 Cal. 3d at 808). The court held that unavailability of class action relief in the selected forum was sufficient in and of itself to preclude enforcement of the forum selection clause. *Id.* at 18. The decision in *America Online* was approved by the California Supreme Court in *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 158-59, 113 P.3d 1100, 30 Cal. Rptr. 3d 76 (2005).[8]

¶30 AOL points out, however, that unlike California's consumer protection law, which contains an antiwaiver provision applying to class actions, this state's CPA does not contain an antiwaiver provision. We do not believe that the absence of an express class action antiwaiver provision in the CPA undercuts the public policy expressed in the dual enforcement scheme enacted by the legislature. It is clear that the legislature's addition of the private right of action to enforce RCW 19.86.020 was intended to encourage individuals to enforce the act and fight restraints of trade; unfair competition; and unfair, deceptive, and fraudulent acts or practices. This public policy is violated when a citizen's ability to assert a private right of action is signifi-

---

[8] Other courts have upheld forum selection clauses that preclude class suits in the consumer setting. In *America Online, Inc. v. Booker*, 781 So. 2d 423 (Fla. Dist. Ct. App. 2001), the court, addressing the same clause as is at issue here, rejected the plaintiff's claim that the clause effectively denied a remedy because it would be economically impractical to litigate individual claims in Virginia small claims court. The court held that the unavailability of a class action procedure, standing alone, is not enough to render such a clause unenforceable. *Id.* at 425; *see also, e.g., Gilman*, 345 Md. 361 (lack of class action procedure in selected forum is not the sort of deficiency that ordinarily renders a forum selection clause unenforceable; the clause in question was an arbitration clause whereby the plaintiff agreed to arbitrate and, the court reasoned, thereby waived the right to seek remedies in court, including the right to a class suit); *Koch v. America Online, Inc.*, 139 F. Supp. 2d 690 (D. Md. 2000) (following *Gilman*); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007 (D.C. 2002).

cantly impaired by a forum selection clause that precludes class actions in circumstances where it is otherwise economically unfeasible for individual consumers to bring their small-value claims.

¶31 We affirm the Court of Appeals' holding that the forum selection clause in the AOL contract at issue is unenforceable on public policy grounds if the lack of a class action procedure leaves the plaintiff with no feasible avenue for seeking relief for violations of the CPA. Thus, for example, where the value of an individual claim is significant or the absence of a class action option would not, when viewed objectively, be likely to deter an individual action, public policy does not defeat a forum selection clause.

¶32 The next question is whether, as AOL contends, congressional enactment of the CAFA dictates that this action should be dismissed. As noted, after the Court of Appeals handed down its decision in this case, the federal CAFA was signed into law. Pub. L. No. 109-2, 119 Stat. 4 (2005). CAFA amended 28 U.S.C. § 1332 to expand federal jurisdiction over putative and certified class actions where the matter in controversy exceeds $5,000,000, determined by aggregating the claims of the individual class members.[9] 28 U.S.C. § 1332(d)(1), (2), (6), (8). Complete diversity of parties is not required under the law as amended if the plaintiffs bring their action in federal court and invoke Fed. R. Civ. P. 23. 28 U.S.C. § 1332(d)(1)(B), (2). CAFA applies to "any civil action commenced on or after the date of enactment of this Act." § 9, 119 Stat. at 114.

¶33 AOL urges this court to reverse the Court of Appeals' decision on the grounds that enactment of CAFA mooted the sole basis relied on by the Court of Appeals for invalidating the forum selection clause. AOL reasons that once this case is dismissed, plaintiffs can file a class action under CAFA in federal court in Virginia.

---

[9] As noted, the plaintiffs successfully obtained remand from federal court, arguing that the court lacked subject matter jurisdiction because the amount in controversy was under $75,000 per plaintiff.

¶34 This case was commenced over two years before CAFA was enacted and it is still a pending case. The only way CAFA would be remotely relevant would be if this court were to dismiss this case. Then, several assumptions would have to be made before such a dismissal could be considered, including the assumption that refiling suit would be considered "commencement" of a new action, that the "new" action would be filed within the relevant statute of limitations (and persons qualifying as members of the putative class, including the named plaintiffs, would not be time-barred as a result of dismissal and refiling), and that the plaintiffs' claims would in the aggregate amount to $5,000,000. We decline to dismiss this action on the highly speculative ground that an action will then proceed under CAFA.

¶35 In light of our disposition of the main issue in this case, we need not reach other issues raised by the plaintiffs.

¶36 Finally, the Court of Appeals reasoned that because the forum selection clause is unenforceable as to AOL, the trial court's dismissal of ICT cannot stand. *See Dix*, 125 Wn. App. at 937 n.2. We agree and affirm the Court of Appeals' reversal of dismissal of the plaintiffs' claims against both AOL and ICT.

## CONCLUSION

¶37 Although forum selection clauses are prima facie valid, a forum selection clause may be invalid if it violates the public policy of this state. A decision regarding the enforceability of a forum selection clause is evaluated for an abuse of discretion. If a forum selection clause precludes class actions and thereby significantly impairs Washington citizens' ability to seek relief under the CPA for small-value claims, the clause violates the public policy underlying the CPA's dual enforcement scheme expressed in the attorney general and private rights of action under the act. Because AOL's forum selection clause precludes class actions for small-value CPA claims and there is no feasible alternative

avenue for seeking relief on such claims, the forum selection clause is invalid and unenforceable and dismissal was an abuse of discretion. We affirm the Court of Appeals.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.