IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GINGER M. SMITH, a single person, | ) | No. 31617-3-III |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| MICHAEL LUNDY and JANE DOE | ) | |
| LUNDY, a marital community, | ) | |
| | ) | |
| Respondents. | ) | |

KORSMO, J. — Plaintiff Ginger Smith won a motion-in-limine, but it did not have the desired effect of keeping the defendant's expert witnesses off the stand. Finding no abuse of discretion in the trial court's rulings, we affirm.

## FACTS

In February of 2008, Michael Lundy struck a vehicle being driven by Ms. Smith. The force of the collision caused Ms. Smith's vehicle to roll over. She suffered numerous physical injuries and possibly a closed head injury.

As time passed, Ms. Smith's physical injuries largely resolved, but she appeared to have sustained a permanent neuropsychological impairment. Prior to the collision, Ms. Smith worked as a certified nursing assistant (CNA) and also attended school with the hope of becoming a registered nurse. After the collision, she never felt well enough to return to work or school.

Believing herself permanently disabled, Ms. Smith filed for disability benefits. In early 2009, the Washington State Department of Social and Human Services (DSHS) referred Ms. Smith for a neuropsychological exam with Debra Brown, Ph.D., to determine the nature and extent of her claimed mental disability. Dr. Brown found that Ms. Smith had several mild to moderate forms of dysfunction in different places in the brain, no indication of malingering, cognitive disorder not otherwise specified, and post-traumatic stress disorder. Ms. Smith obtained disability benefits based on these findings.

In September of 2010, Ms. Smith filed her complaint against Mr. Lundy. Ms. Smith claimed that the collision caused her debilitating mental impairment. She claimed that this impairment permanently prevents her from returning to work as a CNA and from being able to complete nursing school.

Mr. Lundy retained neuropsychologist Ronald Klein, Ph.D. In 2011, Dr. Klein performed a CR 35 mental examination on Ms. Smith. Based on his testing and examination, Dr. Klein believed Ms. Smith to be malingering her mental impairment. He also found that Ms. Smith's self-described symptoms did not match the recognized

clinical patterns of someone with her claimed mental injuries. He found a lack of causation between Ms. Smith's claimed anxiety disorder and the collision with Mr. Lundy. He also believed that Ms. Smith's pre-injury educational and vocational history suggested that Ms. Smith was never likely to have completed college and become a registered nurse.

To support her allegations, Ms. Smith retained Dr. Brown—the same neuropsychologist who examined Ms. Smith on behalf of DSHS. Dr. Brown conducted additional testing on Ms. Smith and found the results to be consistent with her original tests in 2009.

Dr. Klein reviewed Dr. Brown's updated findings. In a follow-up report, Dr. Klein argued that Dr. Brown misinterpreted the data from her testing on Ms. Smith. Instead of showing a mental impairment, Dr. Klein believed that the results from Dr. Brown's testing data showed a person with average mental capacity.

Ms. Smith filed a motion to exclude Dr. Klein's opinion of malingering. Ms. Smith supported her motion with a declaration from her rebuttal expert, neuropsychologist Kristoffer Rhoads, Ph.D. Dr. Rhoads explained that Dr. Klein's test results did not fall within the range of malingering. He also explained that Dr. Klein's interpretation of the testing data and resulting opinion regarding malingering substantially departed from the generally accepted standards applied by the neuropsychological community. After a hearing, the court excluded Dr. Klein's malingering opinion.

Ms. Smith then brought motions to completely exclude Dr. Klein, and Mr. Lundy's two damages experts—Erick West and Deborah Lapoint – on the basis that all of their testimony was predicated entirely on the excluded malingering opinion. The court denied the motions because Dr. Klein had other helpful opinions to present, and because the exclusion of the malingering diagnosis did not render the damages experts' opinions unreliable.

At trial in December of 2012, Ms. Smith's counsel conducted a voir dire examination of Dr. Klein. Counsel asked Dr. Klein if he had any reason, other than malingering, for rebutting the objective testing that showed Ms. Smith had suffered a closed head injury. Dr. Klein responded that his finding of malingering was the only way he could rebut the testing, but also testified that he still maintained additional opinions that were not dependent on a malingering opinion. Ms. Smith renewed her motion to exclude Dr. Klein completely. The court denied the motion, noting that "there's quite a bit of information and material on which a skillful and searching cross-examination of Dr. Klein can be conducted even without Dr. Klein's ability to testify on the subject of malingering." Report of Proceedings at 411.

Dr. Klein then testified in front of the jury on direct examination that Ms. Smith did not suffer a closed head injury and that she did not have any psychological impediment that would prevent her from returning to work. Dr. Klein testified that the long-delayed manifestation of Ms. Smith's neuropsychological symptoms weighed

4

against there being a causal connection to the collision. He also testified that Ms. Smith's self-reported symptoms did not match known manifestation patterns of other brain injury patients. He further testified that the tests done by Dr. Brown were all within normal functioning ranges and that Dr. Brown misinterpreted the data.

At the conclusion of the trial, Ms. Smith asked the jury to award past economic and non-economic damages as well as future economic and non-economic damages due to Ms. Smith's permanent mental impairment. The jury returned a special verdict awarding past economic and non-economic damages, but refused to award any future damages. Ms. Smith then appealed to this court.

## ANALYSIS

Ms. Smith primarily challenges the trial court's refusal to exclude Dr. Klein under ER 702. This court reviews evidentiary rulings for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-30, 705 P.2d 1182 (1985). A court abuses its discretion when it exercises discretion on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion." *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

To admit expert testimony, the proponent must show that the testimony would be helpful to the jury. ER 702. Expert testimony is not helpful if the judge determines that

5

the testimony is based on speculation or is unreliable. *Miller v. Likins*, 109 Wn. App. 140, 148, 34 P.3d 835 (2001); *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 918, 920, 296 P.3d 860 (2013). A court also may not admit expert testimony if the court determines that the facts or data relied on by the expert are not of a type reasonably relied upon by experts in the particular field. *Lakey*, 176 Wn.2d at 918.

Ms. Smith argues that Dr. Klein should have been excluded as unhelpful because he did not have any admissible opinions to offer to the jury. She directs the court to her voir dire examination of Dr. Klein where he testified that his only basis for discounting Ms. Smith's impaired test results was to opine that she was malingering.

However, the fact that Dr. Klein could not tell the jury the full reason why he did not trust the test results did not mean that he did not have other relevant testimony to provide. Dr. Klein had other admissible opinions that did not rely on the excluded diagnosis of malingering, including his partial disagreement with Ms. Smith's test results because he believed that Dr. Brown misinterpreted the testing data. He testified that Ms. Smith's pre-injury educational and vocational history made it doubtful that she would have completed nursing school with or without having suffered a closed head injury. He believed that Ms. Smith's clinical presentation did not match the recognized clinical patterns of someone who had suffered Ms. Smith's claimed mental impairment. Although these opinions fed into and supported Dr. Klein's ultimate opinion that Ms. Smith was malingering, the fact that Dr. Klein could not support a full opinion of

6

malingering did not make these component opinions any less relevant and helpful to determining the nature and extent of Ms. Smith's injuries. Accordingly, the trial court had tenable grounds for denying the motion.

Ms. Smith also argues that the trial court abused its discretion by delegating its gatekeeping function to the jury. While the court under ER 702 must make a threshold determination of reasonability, the trier of fact must also make a determination of reasonability. Reviewing in full the record on the motion, rather than focusing on the limited excerpt of the ruling relied on by counsel, we conclude that the court did not delegate its gatekeeping function to the jury. After reviewing the record, listening to Dr. Klein testify, and receiving argument from counsel, the court found that Dr. Klein had plenty of opinions other than malingering. Because there were no challenges to the facts or data relied on by Dr. Klein to reach these other opinions, the court was not required to delve further before permitting him to testify.

Ms. Smith next challenges the trial court's refusal to exclude Mr. Lundy's two damages experts whose opinions were based on Dr. Klein's reports. Because the court properly permitted Dr. Klein to offer his opinions to the jury, the court did not err by also permitting Mr. Lundy's damages experts to testify based on those opinions.

Finally, Mr. Lundy requests his attorney fees on appeal for having to defend against what he believes was a frivolous appeal. While Ms. Smith did not ultimately

7

No. 31617-3-III
*Smith v. Lundy*

prevail in her appeal, we do not believe that this appeal is so lacking in merit as to

warrant an award of attorney fees under RAP 18.9.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Korsmo, J.

WE CONCUR:

Brown, J.

Siddoway, C.J.

8