IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of: | No. 87345-8-I |
| HANNAH KATHRYN THIESS, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| BLAKE JAMES THIESS, | |
| Respondent. | |

DÍAZ, J. — A trial court entered a final parenting plan and dissolved the marriage of Hannah Kathryn Thiess and Blake James Thiess.[1]  Hannah now claims the trial court erred by ordering joint decision-making and equal residential time despite finding that each party committed domestic violence.  Because former RCW 26.09.191(1) (2021)[2] prohibits joint decision-making where the court has made such a finding, we remand the case for the trial court to award sole decision-making to one parent.  We affirm the court's decision on equal residential time.

---

[1] We hereafter refer to the parties by their first names to avoid confusion.  No disrespect is intended.
[2] See LAWS OF 2021, ch. 215 § 134.

## I.    BACKGROUND

The parties married in August 2017.  Their son was born in June 2021.  After the birth of their son, the relationship between Blake and Hannah deteriorated.  Hannah filed a petition for dissolution in April 2023.

During the dissolution proceedings, Hannah admitted to striking Blake twice.  Blake admitted to calling Hannah a "sorry excuse for a person," "a selfish idiot," "disgusting," a "pathetic person," and other derogatory statements.  Based on this testimony, the trial court stated, "there's no doubt that . . . both parties . . . engaged in acts of domestic violence defined by RCW 7.105.010."  The court entered explicit findings that Hannah had a history of physical domestic violence and Blake had a history of emotional domestic violence.

Still, the trial court determined that it would not impose restrictions on decision-making on either party.  The court explained, "[s]o when both parties commit acts of domestic violence, how can I restrict both parties on decision-making?  I can't.  So under [former RCW 26.09.191(1)] I can't.  I will find domestic violence, but I can't restrict either because both parties engaged."  Further, "[w]hen you have both parties admitting to acts of domestic violence, I can't award sole decision making to one party or the other.  It just doesn't make any commonsense in this case.  I can't lose sight of commonsense."  The court ordered Hannah and Blake to have joint decision-making for all major decisions.

The court also declined to impose any restrictions on residential time for either parent.  The court found that both parents satisfied the requirements for the

exception to restrictions provided in former RCW 26.09.191(2)(n) (2021).[3] The court entered "a fifty-fifty parenting plan, week-on week-off."

Hannah timely appeals.

## II.    ANALYSIS

Hannah challenges both the order granting joint decision-making and the order granting equal residential time, arguing that the finding of bilateral domestic violence and former RCW 26.09.191 prohibit such orders. We address each in turn, after laying out the standard of review for such matters.

"We review a trial court's parenting plan for abuse of discretion." *In re Marriage of DeVogel*, 22 Wn. App. 2d 39, 45, 509 P.3d 832 (2022). A trial court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard[.]" *Id.* at 47. A decision is based on untenable grounds if the factual findings are unsupported by the record and untenable reasons if based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Id.* "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion." *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007). Where necessary, we consider statutory construction as a question of law reviewed de novo. *In re Marriage of Watson*, 132 Wn. App. 222, 230, 130 P.3d

---

[3] *See* LAWS OF 2021, ch. 215, §134.

915 (2006).

A.     Decision-Making

When considering each component of a parenting plan, a trial court must consider the impact of any restrictions imposed under RCW 26.09.191. *See* RCW 26.09.187. Pertinent here, former RCW 26.09.191(1) states that "[t]he permanent parenting plan shall not require mutual decision-making . . . if it is found that a parent has engaged in . . . a history of acts of domestic violence as defined in RCW 7.105.010." Noting that the use of "shall" in the statute presumes "that the legislature created a duty rather than conferring discretion," this court has interpreted the imposition of former RCW 26.09.191(1) restrictions as mandatory. *In re the Parenting and Support of C.A.S.*, 25 Wn. App. 2d 21, 27-28, 522 P.3d 75 (2022). "On its face the statute affords no discretion, it prohibits trial courts from requiring mutual decision-making . . . where there is a history of domestic violence." *Id.*

This court in *C.A.S.* was not presented with a situation where the court found that both parents had engaged in a history of acts of domestic violence. However, the plain language of former RCW 26.09.191(1) prohibits a court from requiring mutual decision-making where it finds that "a parent" has a history of domestic violence. In other words, on its face, former RCW 26.09.191(1) restrictions apply when at least one parent has a history of domestic violence. *Cent. Puget Sound Reg'l Transit Auth. v. WR-SRI 120th N. LLC*, 191 Wn.2d 223, 234, 422 P.3d 891 (2018) ("We first examine the plain language of the statute 'as [t]he surest indication of legislative intent.'" (internal quotation marks omitted)

4

(quoting State v. Larson, 184 Wn.2d 843, 848, 365 P.3d 740) (2015))). The mandatory restriction on joint decision-making in RCW 26.09.191(1) must apply regardless of which parent has, or whether both parents have, a founded history of domestic violence. In turn, we hold that a court may not impose joint decision-making where there is a history of domestic violence, whether by one or both parents.[4]

Here, again, the trial court found that Hannah had "a history of physical domestic violence as defined in RCW 7.105.010" and that Blake had "a history of emotional domestic violence as defined in RCW 7.105.010." Despite these findings, the trial court required joint decision-making as a matter of "common sense." We hold that the trial court's decision was an abuse of discretion because the ruling constituted an incorrect legal analysis. *Dix*, 160 Wn.2d at 833.

Blake argues that interpreting former RCW 26.09.191(1) as barring joint decision-making when both parents have engaged in a history of domestic violences creates absurd results because "both parents could be subject to mandatory restrictions, leaving the child without parental guidance or supervision." (Emphasis omitted.) However, "by its plain language [RCW 26.09.191(1)] prohibits only 'mutual decision-making.'" *DeVogel*, 22 Wn. App. 2d at 46. The statute does

---

[4] This analysis is consistent with prior unpublished decisions where we have addressed the issue of decision-making where both parents engaged in domestic violence, to which we cite as necessary for a reasoned opinion. *See*, *e.g.*, *In re The Parenting and Support of Z.C.*, No. 84897-6-I, slip op. at 13 (Wash. Ct. App. Nov. 13, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/848976.pdf; *In re Marriage of Yorks*, No. 84480-6-I, slip op. at 8-9 (Wash. Ct. App. Feb. 26, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/844806.pdf; GR 14.1(c).

not forbid the court from giving decision-making authority to a parent with a history of domestic violence. *Id.* That is, former RCW 26.09.191(1) requires the court to award primary decision-making to one parent but certainly does not require awarding joint decision-making authority to neither parent. In this case, the court could have ordered sole decision-making to either Hannah or Blake, just not to both.

Similarly, Blake also argues that RCW 26.09.187(2)(b)(i) supports the court's decision. That statute requires the court to allocate sole decision-making "to one parent" when "a limitation on the *other* parent's decision-making authority is mandated by RCW 26.09.191." (Emphasis added.) Blake argues that, under our interpretation, an absurd result would follow because then sole decision-making authority could be assigned to neither parent (or would reside in a fictional "both parents" construct), as each parent is the "other." We need not engage in such metaphysics to create a conflict between statutes that does not exist.

Our prior published precedent, including *DeVogel*, did not address this statute. However, as we held in an unpublished decision, when "[r]ead together, RCW 26.09.187 ["other parent" language] and .191 unambiguously require that a permanent parenting plan must not require mutual decision-making authority if the court finds that a parent has a history of acts of domestic violence and that the court must grant sole decision-making authority to the parent who does not have a history of domestic violence." *In re Marriage of Tullis*, 79303-9-I, slip op. at 8 (Wash. Ct. App. Oct. 5, 2020) (unpublished), https://https://www.courts.wa.gov/opinions/pdf/793039.pdf (emphasis omitted). Under

GR 14.1(c), we cite to and adopt the reasoning of this well-reasoned opinion for as far as it goes.

This opinion simply extends *Tullis'* reasoning to situations where there is no parent without a history of domestic violence. RCW 26.09.187 applies to situations where only one parent has a history of violence, and RCW 26.09.191(1) ensures there is no joint decision-making making in all other situations. *See In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995) ("In ascertaining intent, we must look to the whole statute, rather than the single phrase at issue."); *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 588, 192 P.3d 306 (2008) ("This court assumes the legislature does not intend to create inconsistent statutes. Statutes are to be read together, whenever possible, to achieve a harmonious total statutory scheme . . . which maintains the integrity of the respective statutes." ((some alterations in original) (citation omitted) (internal quotation marks omitted) (citing *State ex rel Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000))).

Not only did the trial court apply an incorrect legal analysis, it also abused its discretion by basing its ruling on "an erroneous view of the law" under the facts of this case. *Dix*, 160 Wn.2d at 833. The court, on multiple occasions, stressed the high conflict nature of the parties' relationship and noted that they had been "antagonizing each other" since their child was born. Due to the ongoing tension between the parents, the court ordered them to exchange the child in the parking lot of a police precinct, specifying that three parking spaces remain between their vehicles. The parties were to remain in their vehicle except for the receiving

parent. During exchanges, "[n]othing is to be said, verbally, non-verbal communication, no shrugging, no staring[.]" Given the trial court's assessment of the conflict and mistrust between the parties, its decision to require joint-decision making was not in the best interest of their child.

It appears to us that the purpose of former RCW 26.09.191(1) limitations is to prevent future conflict between parents, or within families, with turbulent histories. When establishing a parenting plan, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09.002. As "children's resilience and well-being are so closely tied to the physical and emotional safety of their primary caretakers (typically the non-offending parent), the legislature has recognized that ensuring this safety is consistent with children's best interests." GENDER & JUST. COMM'N, WASH. ST. SUP. CT., DOMESTIC VIOLENCE MANUAL FOR JUDGES 10-13 (2016), https://www.courts.wa.gov/content/manuals/domViol/chapter10.pdf [https://perma.cc/7P66-6RAU]. This goal is furthered by limiting potential flashpoints and creating a greater degree of separation between the parties. Where, as here, parents both have a founded history of domestic violence, joint decision-making does not minimize potential conflict and, thus, is not in the child's best interests under RCW 26.09.002.

We reverse and remand for the trial court to modify the parenting plan to award major decision-making authority to one parent.[5]

---

[5] While the court must choose a single decision-maker, we leave the many additional considerations related to that decision to the trial court's broad

B.      Residential Time

Hannah contends that the trial court erred by declining to restrict Blake's residential time under former RCW 26.09.191(2) because its conclusion that he satisfied the exception in former RCW 26.091(2)(n) was not supported by the facts. Specifically, Hannah argues that the court failed to consider Blake's "ongoing abusive behavior" after separation, including "stalking behavior following the exchanged, physical posturing and acts of intimidation during exchanges, and coercive and demeaning behavior."

"A parent's residential time with the child shall be limited if it is found that the parent has engaged in . . . a history of acts of domestic violence as defined in RCW 7.105.010[.]" Former RCW 26.09.191(2)(a)(iii).   However, unlike former RCW 26.09.191(1), the court may choose not to impose limitations on residential time,

> [i]f the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations . . . or if the court expressly finds that the parent's conduct did not have an impact on the child[.]

Former RCW 26.09.191(2)(n); *see C.A.S.*, 25 Wn. App. 2d at 28.  The exception requires the court to find either (1) the contact will not cause harm and the likelihood of the abusive conduct recurring is remote, or (2) the conduct did not

---

discretion.  For example, this court has held that concerns related to sole-decision making may be alleviated by requiring the decision-making parent to provide sufficient notice such that the other parent may have the opportunity to seek court intervention. *In re Marriage of Mansour*, 126 Wn. App. 1, 11, 106 P.3d 768 (2004).

have an impact on the child. Former RCW 26.09.191(2)(n).

We will uphold a trial court's findings if they are supported by substantial evidence. *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). "'Substantial evidence' exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *Id.*

Here, the trial court entered findings that the exception applied to the parents on both grounds:

> (a) The domestic violence of the parties did not have any impact on the child;
> (b)(i) The contact between either parent and the child will not cause physical, sexual, or emotional harm to the child, and
> (b)(ii) the probability that either parents' harmful or abusive conduct will reoccur is so remote that it is not in the child's best interests to apply the limitations of RCW 26.09.191(2)[.]

In support of its findings, the trial court stated, "[n]o evidence was presented in any shape or form that the father's name calling to mother impacted the child. There's no evidence to show that [the] mother's . . . physical assault upon father . . . had an effect on the child." The record reflects the trial court's characterization that the evidence does not show the parents' conduct impacted the child. The finding of no impact satisfies one of the grounds for the court to exercise the discretion provided by RCW 26.09.191(2)(n). Therefore, the court did not abuse its discretion by declining to restrict Blake's residential time.

C.    Request for a Different Judge

Hannah requests that the remand proceedings, if any, proceed before a different judicial officer.

10

A party may seek reassignment to a different judge "where 'the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." *In re Marriage of Black*, 188 Wn.2d 114, 137, 392 P.3d 1041 (2017) (quoting *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014)). Hannah contends that reassignment is necessary because the trial court has already expressed an opinion as to the merits of the case and prejudged the issues by deciding against imposing RCW 26.09.191 restrictions before close of testimony.

On remand, the court must determine which parent should have sole decision-making authority. In the original proceedings, the court did not express an opinion as to which parent should have sole decision-making authority. In fact, the court emphasized that both Hannah and Blake are "fabulous parents," opining that both "have so much to give to this child. More than any parent." Additionally, the court blamed both parents for the high conflict nature of the case. "You're restrictive, both of you. Fight, fight, fight. The agreements of the parties, none."

Given the statements reflecting the court's opinion that Hannah and Blake are both good parents and equally culpable with respect to the conflict in the relationship, we cannot agree that the court has expressed an opinion or prejudged which parent should have sole-decision making authority. There is no need to reassign the proceedings on remand to a different judicial officer.

III.    CONCLUSION

We affirm in part, reverse in part, and remand this matter to the trial court

11

to modify the parenting plan to award sole decision-making authority to one parent.

Díaz, J.

WE CONCUR:

Chung, J.